No. 56,932

Ernest E. Green and Phyllis K. Green, *Plaintiffs-Appellees,* v. Don Geer, d/b/a Century 21 Geer Real Estate, *Defendant-Appellant,* John Barnes, *Defendant,* and Paul Doleshal and Susan Doleshal, *Defendants-Appellants.*

(720 P.2d 656)

Opinion filed June 13, 1986.

*Edward H. Powers, Sr.,* of Kansas City, argued the cause and was on the brief for appellant Don Geer.

*Paul M. Dent,* of Kansas City, argued the cause and was on the brief for appellants Paul and Susan Doleshal.

*Gerald N. Jeserich,* of Boal and Jeserich, of Kansas City, argued the cause and was on the brief for appellees Ernest and Phyllis Green.

The opinion of the court was delivered by

Herd, J.: This is a civil action for misrepresentation and breach of warranty. Defendants Paul Doleshal and Susan Dole-

shal and Don Geer, d/b/a Century 21 Geer Real Estate, appeal a judgment for plaintiffs, Ernest E. Green and Phyllis K. Green.

This controversy arose over a real estate contract entered into June 17, 1982, between Ernest Green and Phyllis Green, purchasers, and Paul Doleshal and Susan Doleshal, sellers. John Barnes, a salesman for Geer Real Estate, was the agent for the Doleshals.

The purchasers advised Barnes they would not buy a house unless it had a dry basement. The Doleshal house had a wet basement. The Doleshals and Barnes represented to the Greens that the water problem was caused by settling of the basement window wells. They advised the Greens the problem could be solved by terracing the yard so the water would drain away from the windows. The real estate contract was amended to include a clause to this effect.

On August 7, 1982, the Greens moved into the house. In spite of the reterracing of the lawn, within a few days the basement water problems reappeared. The water came from the seam between the floor and wall and from a crack in the floor. The problems continued through the time of trial.

David Scott of Scott Brothers Waterproofing Company testified for the Greens, stating the basement water problem could be solved by installing a subfloor drain system and sump pump at a cost of $4,056. Willard Norton, a professional engineer, testified for appellants. Norton had consulted Robert Synder of Retro-Force of America, Inc. Snyder estimated the problem could be solved by sealing and grading at a cost of $4,035.

The trial court found for the Greens and awarded them judgment in the amount of $4,835 for basement repair and loss of stored goods. The court ordered Geer Real Estate to pay $1,500 of the judgment and the Doleshals to pay $3,335 and costs. This appeal by the Doleshals and Geer followed.

The Doleshals argue the judgment against them should be reversed because the trial court's findings of fact are not supported by substantial competent evidence and its conclusions of law are contrary to the law. Specifically, they take issue with the trial court's finding that the Doleshals knew of the water problem and its source and they fraudulently concealed this information from their agent and the Greens.

Before considering the Doleshals' contentions, we first review the rules relating to our scope of review.

The scope of appellate review is to determine from a search of the record whether the findings of fact are supported by substantial competent evidence and if the findings of fact are sufficient to support the trial court's conclusions of law. The trial court's findings will not be set aside unless clearly erroneous. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 735-36, 697 P.2d 52 (1985). Viewing the evidence in the light most favorable to the party prevailing below, we will not weigh the evidence, except to determine its substantiality, or pass upon the credibility of the witnesses. *Toumberlin v. Haas*, 236 Kan. 138, Syl. ¶ 5, 689 P.2d 808 (1984). Substantial evidence is evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 21, 687 P.2d 603 (1984).

Let us briefly review the testimony of the witnesses for the Greens. Terry Larkin testified he visited the Greens and observed water coming into the basement through the wall. David Scott of Scott Brothers Waterproofing Company inspected the Greens' basement, found it had a water problem and recommended installation of a subfloor drain and a sump pump at a cost of $4,056. John Green, Ernest Green's brother, testified he visited appellees' home in September 1982 and several times thereafter and observed water in the basement coming in through the base of the wall. Michael Butko, Ernest Green's brother-in-law, testified he took photographs of the Greens' basement on December 9, 1982. These photographs showed water in the basement and were admitted into evidence. Ernest Green and Phyllis Green both testified they noticed water in the basement on August 12, 1982, five days after they moved in, and that since that time they have had water problems every time it rains. Ernest Green also testified he had made it clear to Barnes they were not interested in buying a house unless it had a dry basement for storage of samples. They also testified that Barnes and the Doleshals had assured them the basement water problem would be taken care of by the Doleshals' terracing the front yard.

John Barnes confirmed that the Greens were concerned about a dry basement and testified the Doleshals had told him there was a basement water problem but that it was caused by water coming in the windows, as recognized in the contract.

Doleshal testified he had built the house and moved in in 1979 and had no basement water problems until 1980 when the window wells on the south side settled. He further testified, "[W]hen it would rain hard enough water would collect behind the glass inside the window well. Then it would seep down the wall and collect in a puddle there and that was it."

Substantial competent evidence was presented at trial to establish a major problem with water leaking into the Greens' basement. What is more, the evidence supports a finding that the Doleshals knew of the true nature of the problem prior to the sale of their house. It is clear from the evidence that the Doleshals knew the problem was not simply leaking window wells, yet they failed to reveal the gravity of the problem to their agent or to the Greens.

In addition, the trial court's conclusion that the Doleshals' failure to disclose the true nature of the problem constituted fraudulent concealment is supported by the evidence and is not contrary to the law.

We have held that when a vendor or lessor has knowledge of a defect in property which is not within the fair and reasonable reach of the vendee or lessee and which he could not discover by the exercise of reasonable diligence, the silence and failure of the vendor or lessor to disclose the defect in the property constitute actionable fraudulent concealment. *Service Oil Co., Inc. v. White,* 218 Kan. 87, Syl. ¶ 4, 542 P.2d 652 (1975). In order for silence regarding a defect to constitute fraud, the seller must have knowledge of a material defect that is not within the fair and reasonable reach of the buyer and which is not discoverable by reasonable diligence. *Griffith v. Byers Construction Co.,* 212 Kan. 65, 70, 510 P.2d 198 (1973); *Jenkins v. McCormick,* 184 Kan. 842, 339 P.2d 8 (1959).

The Doleshals argue their actions could not constitute fraudulent concealment because they did not have knowledge of a material defect. As we have already determined, sufficient evidence exists to support the trial court's conclusion that the Doleshals knew the actual cause of the basement condition.

The Doleshals contend that even if a material defect existed, it was discoverable by reasonable diligence and the Greens failed to exercise such diligence. This contention is not supported by the evidence. The Greens, when viewing the Doleshal house prior to sale, observed a 6 foot by 12 foot puddle of water on the basement floor. They were quickly informed by Barnes that the source of the water was a leaking window well and Mr. Doleshal would take care of the problem by reterracing the front yard. Pursuant to this conversation, a clause was placed in the contract by which the Doleshals agreed to reterrace the yard away from the foundation to stop water from coming in the window wells. The Greens had no reason to disbelieve Barnes' statements concerning the source of the water problem. Nor did they have reason to doubt the statements of Mr. Doleshal, a builder and carpenter experienced in home construction. Under these circumstances, it cannot be said that the Greens failed to exercise reasonable diligence to ascertain the existence of material defects. Accordingly, we affirm the trial court's findings of fact and conclusions of law as they relate to appellants Doleshals.

We next consider the arguments of appellant Don Geer. Geer argues there was no basis for holding him liable for the damages sustained by the Greens.

The trial court entered judgment against Geer in the amount of $1,500, but it is difficult to determine upon what basis this judgment was entered. The court found the Greens relied upon the "guarantee" of John Barnes on behalf of Geer Real Estate that the sellers would provide a dry basement. However, the court also held that in guaranteeing a dry basement, Geer Real Estate relied upon representations made by the Doleshals. Finally, the court held that while the Doleshals knew of the water problem and its source, they failed to reveal this information to Geer.

A review of the record reveals no evidence to support a finding that Geer guaranteed, either orally or in writing, that the Doleshals would provide a dry basement. In fact, the evidence clearly shows that Barnes, acting for Geer, simply relayed to the Greens the information given to him by Mr. Doleshal regarding the cause of the wet basement. Furthermore, Barnes informed the Greens of the Doleshals' promise to repair the problem by reterracing the yard away from the foundation.

Nor does the evidence support a finding that Geer fraudulently misrepresented the source of the problem to the Greens. In *Nordstrom v. Miller*, 227 Kan. 59, 64, 605 P.2d 545 (1980), we held that if an agent makes false representations on behalf of his principal honestly believing them to be true, the mental element of fraud is lacking and he is not guilty of fraud and is not liable for such, although the principal may have known that such representations were false.

The statements made by Barnes regarding the source of the basement water problem proved to be false. However, in making the statements, Barnes was merely passing on information furnished to him by the Doleshals. Therefore, Barnes' representations did not amount to fraud and thus there was no basis for holding Geer liable for the damages sustained by the Greens. Accordingly, we reverse the portion of the judgment Geer was ordered to pay.

Our reversal of the judgment against Geer raises another issue. The trial court found the Greens had sustained total damages of $4,835.00 ($4,035 for repairs and $800.00 for damaged goods). The court then proceeded to assess $1,500.00 of this judgment against Geer and $3,335.00 against the Doleshals. The appellants were sued jointly by the Greens and no division of monetary responsibility was made in the pleadings or at any time during the proceedings in this case. Therefore, our reversal of the judgment against Geer leaves the full judgment assessed against the Doleshals.

As his final point on appeal, Geer argues he is entitled to indemnification from the parties for any liabilities .or expenses incurred by him as a result of this litigation.

Following the filing of this suit by the Greens, Geer filed a cross-claim against the Doleshals and a counterclaim against the Greens. These claims were based on paragraph 18 of the real estate contract which states:

"It is understood that Realtor is acting as agent only and will in no case whatsoever be held liable to either party for the performance or non-performance of any term or condition of this agreement. Both parties and each of them agree to indemnify and hold harmless said Realtor against all expenses and liabilities which in good faith and without fault on his part he may incur or sustain in connection with any court action arising out of this agreement."

The trial court made no findings with respect to Geer's indemnity claim and no objection to this omission appears in the

record. A litigant must object to inadequate findings and conclusions at the trial court level in order to give the trial court an opportunity to correct them. *Burch v. Dodge,* 4 Kan. App. 2d 503, 507, 608 P.2d 1032 (1980). In the absence of an objection, omissions in findings will not be considered on appeal. *Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366, 598 P.2d 188 (1979).

The judgment is affirmed in part and reversed in part.