No. 59,201

THE CRICKET ALLEY CORPORATION, *Appellee,* v. DATA TERMINAL SYSTEMS, INC., *Appellant.*

(732 P.2d 719)

Opinion filed February 20, 1987.

*Robert A. Anderson*, of Turner and Boisseau, Chartered, of Great Bend, argued the cause, and *Casey R. Law*, of the same firm, was on the brief for appellant.

*J. Michael Morris*, of Sargent, Klenda, Mitchell & Austerman, of Wichita, argued the cause, and *Alexander B. Mitchell* and *Jana C. Werner*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a breach of express warranty action brought by plaintiff Cricket Alley Corporation against defendant Data Terminal Systems, Inc., (DTS) relative to plaintiff's purchase of certain computerized cash registers. Following a jury trial, judgment was entered in favor of plaintiff for $78,781.79. Defendant appeals therefrom.

Plaintiff operates a number of women's clothing stores. The business, which had commenced in 1967 with one store, had grown by 1978 to seven or eight stores. The business was headquartered in Wichita. In order to keep up with its expanding business, plaintiff purchased a Wang computer which was located in its general office. The individual stores had NCR cash registers with no capacity to communicate directly with the Wang computer. Price tags of sold merchandise had to be manually sorted and posted to inventory records. The paper cash register tapes had to be physically delivered to the Wichita office and the data then transferred to the computer. Robert Harvey, president and founder of the plaintiff company, was desirous of modernizing the company's operation. He was aware that technology existed whereby computerized cash registers in individual stores could communicate with the central computer via telephone lines. Inventory, layaway, sales, and payroll record keeping could then be greatly simplified and expedited. Inasmuch as the company already owned the Wang computer, any cash register system purchased for the stores had to be compatible with the Wang equipment. In 1980, Harvey saw an advertisement in a trade magazine featuring Wang computers and DTS cash registers working together. In January of 1981, Harvey attended a convention of the National Retail Merchants Association in New York City. Manufacturers of equipment utilized by retail merchants had displays at the convention. DTS had rented

a ballroom in which to display its wares to those attending the convention. Harvey was attracted to the DTS display because of the magazine advertisement he had seen. In the DTS display area there was a Wang computer and a DTS cash register working together. Harvey asked a DTS representative present at the display if Wang and DTS equipment really could communicate with each other and the DTS representative stated that they did. Harvey was not an expert on these types of equipment and did not know which model Wang his company owned. He asked if "it will work on all Wangs" and the DTS representative responded affirmatively. Harvey made inquiries to other DTS personnel in the display area about DTS capabilities. Satisfied with their responses, Harvey inquired about purchasing DTS equipment. He was provided with the names and addresses of DTS dealers in Joplin, Denver, Omaha, and Kansas City.

Harvey hired Steve Axon, a computer programmer, and they conferred with Jim Hunter, a Wang employee, and Bob Mann, of Kansas City Cash Register (the Kansas City DTS dealer), about the particular programs they were seeking. Ultimately, plaintiff agreed to purchase ten DTS cash registers. Included in the system was an ANS-R-TRAN which is a combination of hardware and software. It is a circuit for electronic equipment that plugs into the cash register and is a necessary component if the cash registers were to communicate with a computer. Some of the software in the ANS-R-TRAN comes from DTS. The ANS-R-TRAN owners program reference guide was delivered to plaintiff either shortly before purchase of the equipment or shortly thereafter. This guide, prepared by DTS, indicated that the DTS cash registers would be able to communicate with the computer to perform the functions needed by plaintiff.

The DTS equipment was delivered to plaintiff's home office. All manner of problems, or "bugs," developed when the equipment was being programmed. Meanwhile, the old NCR cash registers in the stores started breaking down and replacement parts were unavailable. Finally, although not functioning as a computerized system, the new DTS equipment was placed in the stores to perform basic cash register functions. The specific difficulties will be discussed elsewhere in this opinion. The fundamental problem was the inability of the Wang computer

and the DTS equipment to communicate with each other. There was testimony at trial placing the problem of deficiency in the DTS equipment. Ultimately, plaintiff replaced the DTS equipment with that manufactured by IBM. This equipment then functioned as a system. Plaintiff brought this action against Wang, Kansas City Cash Register, and DTS. Wang and Kansas City Cash Register settled with plaintiff and only the claims against DTS proceeded to trial. At trial, a verdict, in the amount of $78,781.79, was entered in favor of plaintiff and against DTS. The case before us is an appeal by DTS from that judgment.

## LIABILITY

For its first issue, DTS challenges the sufficiency of the evidence relative to liability. Specifically, DTS contends the district court erred in not granting its motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and for new trial. It is the position of DTS that there was insufficient evidence of an express warranty or any breach thereof.

While evidence of the existence of the express warranty is certainly not overwhelming, we believe it was sufficient for submission to the jury. The jury could have concluded that DTS advertised that its products could communicate with Wang products; that these advertisements induced plaintiff's president to visit the DTS showroom where he saw a display showing Wang and DTS cash registers communicating and was told by a DTS employee that such communication capability was a fact; and that the ANS-R-TRAN manual published by DTS reinforced this representation as to DTS equipment's capability. The evidence clearly showed that the capability of any new equipment to communicate with plaintiff's Wang computer was the prime consideration in selecting new cash registers. Under such circumstances the district court did not err in overruling the respective motions.

Next, DTS argues that the evidence of any breach of express warranty was insufficient. DTS argues that since plaintiff's own evidence showed that occasionally the Wang computer and the DTS cash registers could communicate, the express warranty that they could communicate was satisfied. This argument lacks merit. Certainly a warranty that the Wang and DTS equipment

could communicate carries with it the necessity that such communication would be reliably regular and consistent. Undependable communication is, in some ways, worse than no communication at all.

Finally, DTS argues that the evidence was insufficient to place the fault for the failure to communicate on the DTS equipment. We do not agree. The evidence showed the DTS equipment had like problems when attempting to communicate with a different Wang computer. An expert testified that, through a process of elimination, he concluded the fault was in the DTS equipment. Further, the Wang computer was able to communicate with the subsequently purchased IBM equipment.

## INSTRUCTIONS

For its next issue, DTS contends that certain instructions were erroneous.

Instruction No. 4 states:

"In the manufacture and sale of goods, any representation of fact or promise that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the representation or promise.

"A manufacturer whose product does not conform to the representation or promise is liable for the damages that could reasonably be expected."

The instruction is a modification of PIK Civ. 2d 13.15. Defendant objects to the addition of the word "manufacture" in the first sentence and substituting the word "manufacturer" for "seller" in the second sentence. Although K.S.A. 84-2-313 provides for express warranties by the *seller*, Official UCC Comment No. 2 for the section states, in part:

"Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."

Kansas Comment to K.S.A. 84-2-313 states, "Even advertising by a manufacturer may become an express warranty." DTS does not seriously argue that manufacturers have no liability for breach of express warranties.

PIK Civ. 2d 13.15 is designed for use where violation of K.S.A. 84-2-313 is alleged in a transaction between a buyer and a seller. Liability for breach of an express warranty by a manufacturer is

not predicated upon K.S.A. 84-2-313. However, the modification of PIK Civ. 2d 13.15 contained in Instruction No. 4 is an adequate instruction for the alleged breach of the express warranty by the manufacturer (DTS) herein.

Next, plaintiff contends that the instruction was too broad as it did not limit the jury's consideration to warranties made by DTS. It is argued that the jury was free to impute statements to DTS made by the dealer (Kansas City Cash Register). Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and, where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be regarded as harmless. If the instructions are substantially correct, and the jury could not be reasonably misled by them, the instructions will be approved on appeal. *Trout v. Koss Constr. Co.*, 240 Kan. 86, Syl. ¶ 1, 727 P.2d 450 (1986); *Douglas v. Lombardino*, 236 Kan. 471, 480, 693 P.2d 1138 (1985); *Powers v. Kansas Power & Light Co.*, 234 Kan. 89, 92, 671 P.2d 491 (1983). Instruction No. 2, the "elements" instruction, speaks of warranties of DTS and plaintiff's purchase of the equipment in reliance on the DTS warranty. We believe that the instructions when read as a whole adequately informed the jury on the applicable law.

DTS also complains of Instruction No. 5, which provides:

"A buyer claiming breach of an express warranty related to performance need not prove a specific defect or reason why a product did not perform. Liability for the breach of an express warranty related to performance is the failure of the product to operate or perform in the manner warranted by the manufacturer."

DTS concedes this instruction is a correct statement of the law, but contends in this case it "placed an emphasis on plaintiff's theory of the case" and was misleading because the DTS equipment was a component part of a system that did not work properly. This point is without merit. The instruction simply means that plaintiff did not have to prove what was wrong in the design or manufacture of the DTS equipment which caused it not to perform as warranted—only that it did not function as warranted. The instruction did not relieve plaintiff of the burden to establish that the DTS equipment had failed to perform as warranted.

Finally, DTS complains that the district court erred in refusing to give certain requested instructions. We have carefully reviewed the record and find no reversible error in any of the particulars alleged.

## CONSEQUENTIAL DAMAGES

In this action plaintiff sought consequential and incidental damages. DTS contends that, as a matter of law, plaintiff was not entitled to recover any consequential damages and consideration of same should not have been submitted to the jury.

The parties concede K.S.A. 84-2-714 and -715 constitute the applicable law.

K.S.A. 84-2-714 provides for a buyer's damages for goods which have already been accepted, as here, by the buyer:

"(1) Where the buyer has accepted goods and given notification (subsection (3) of section 84-2-607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

Kansas Comment 1983 to this statute states, in part:

"Subsection (3) merely states that the buyer is entitled to recover any incidental and consequential damages under 84-2-715."

K.S.A. 84-2-715 provides:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from *general or particular* requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty." (Emphasis supplied.)

The consequential damages consist of increased labor costs attributable to the failure of the DTS cash registers to communi-

cate with the Wang computer. DTS contends that it did not know the general or particular requirements and needs of plaintiff's business at the time the express warranties were made and, hence, has no liability under K.S.A. 84-2-715(2)(a) for consequential damages.

Official UCC Comment No. 3 to K.S.A. 84-2-715 provides, in pertinent part:

"In the absence of excuse under the section on merchant's excuse by failure of presupposed conditions, the seller is liable for consequential damages in all cases where he had reason to know of the buyer's general or particular requirements at the time of contracting. It is not necessary that there be a conscious acceptance of an insurer's liability on the seller's part, nor is his obligation for consequential damages limited to cases in which he fails to use due effort in good faith.

*"Particular needs of the buyer must generally be made known to the seller while general needs must rarely be made known to charge the seller with knowledge."* (Emphasis supplied.)

DTS concedes that K.S.A. 84-2-715(2)(a) is "simply a codification" of the old tests contained in *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 (1854).

Computerized cash registers are manufactured for use in retail business establishments. DTS sought to attract retail merchants to their products by advertising in trade magazines and the setting up of a major display of their wares at a national convention of the National Retail Merchants Association where it employed a number of persons to be on hand to answer questions of the convention delegates concerning its products. DTS computerized cash registers are expensive and sophisticated pieces of equipment and the market for them lies largely in the more complex retail establishments. The "mom and pop" grocery store operation is, obviously, not the prime market for such products. The submission of data from the cash registers to the mainline computer on sales, payrolls, inventory, etc. is a common feature of such equipment and the failure of the cash registers to do so would foreseeably create additional labor costs for the afflicted retail merchants. The additional labor costs sought by plaintiff, herein, as consequential damages are not attributable to any unique features of plaintiff's business. We conclude that consequential damages as an element of plaintiff's damages were properly submitted to the jury herein.

## DAMAGE AWARD

DTS contends that the evidence is insufficient to support the damage award of $78,781.79. Consequential and incidental damages were the only damages sought by plaintiff.

Defendant contends that the damages evidence was speculative and not based upon reasonable certainty. In *Stair v. Gaylord*, 232 Kan. 765, 659 P.2d 178 (1983), a farmer sought to recover for damages done to his 1979 strawberry crop due to a faulty irrigation system. In order to show damage, plaintiff showed evidence of the difference in his strawberry crop profits between 1979 and other years. Defendant argued the evidence was speculative. The trial court agreed and directed a verdict for the defendants. On appeal, this court reversed, stating:

"The basic objective of damages under the UCC is 'that the aggrieved party may be put in as good a position as if the other party had fully performed . . . .' K.S.A. 84-1-106(1). One commentator has stated: 'Without incidental and consequential damages this goal would be unreachable in many cases . . . . The availability of consequential damages is vital. It may mean the difference between recovering one dollar, the price of a defective part, and one million dollars, the damages caused as a result of the defective part, in personal injury, lost profits, and more.' Rasor, Kansas Law of Sales Under the UCC § 10-11, pp. 10-36, 10-37. See also *La Villa Fair v. Lewis Carpet Mills, Inc.*, 219 Kan. 395, 406, 548 P.2d 825 (1976).

"Under the UCC consequential damages need not be proven with any particular degree of certainty. Indeed, one purpose of subsection (1) of K.S.A. 84-1-106 'is to reject any doctrine that damages must be calculable with mathematical accuracy. Compensatory damages are often at best approximate: they have to be proved with whatever definiteness and accuracy the facts permit, but no more.' Official UCC Comment, § 1-106. . . .

". . . The evidence shows the dramatic reduction in production and sales for 1979. The appellees vigorously cross-examined the Stairs [plaintiffs] thereby informing the jury the expense items were incomplete. The appellant was not required to provide an exact dollar amount of damages. The evidence presented a valid question of fact from which the jury could have rendered a verdict." 232 Kan. at 773-74.

K.S.A. 84-2-715, Official UCC Comment No. 4, states "the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances."

Evidence submitted to the jury on damages included em-

ployee payroll spread sheets that indicated not only dollar expenses but the percentage of time each employee performed manual tasks which would have been unnecessary had the DTS equipment performed satisfactorily the functions needed by plaintiff and warranted by defendant. Testimony was admitted which supported the functions performed and time involved to accomplish them. The witnesses were vigorously cross-examined as to what costs were attributable to the failure of the DTS equipment to perform properly. Plaintiff claimed $191,517.03 in damages. The verdict awarded $78,781.79 in damages. A question of fact was determined by the jury. After carefully reviewing the record, we conclude the damage award is adequately supported by the evidence.

All other points raised have been considered and are held to be without merit.

The judgment is affirmed.