No. 60,499

STATE OF KANSAS, *Appellee*, v. CHARLES W. MORRIS, *Appellant*.

(765 P.2d 1120)

Opinion filed December 9, 1988.

*Rick Kittel*, assistant appellate defender, argued the cause and *Benjamin C. Wood*, chief appellate defender, was with him on the brief for appellant.

*Debra L. Barnett*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Charles W. Morris appeals from his conviction by a jury of one count of second-degree murder. K.S.A. 21-3402. He raises four issues relating to the admission in evidence of his incriminating statements and the instructions given to the jury. We find no reversible error and affirm.

It is not necessary to detail the tragic facts leading to the defendant's conviction in order to resolve the issues presented in this appeal. It is undisputed that appellant suffocated his three-year-old daughter on the afternoon of July 29, 1986. Later that day, he turned himself in to police at the Wichita city building. After he was taken into custody he was twice read his *Miranda* rights, and in each instance he indicated on the police department's standard rights forms that he did not wish to talk to police. Appellant was charged with first-degree premeditated murder. In a jury trial, he was found guilty of the included offense of second-degree murder. The defendant timely appeals. Additional facts will be stated as they become pertinent to the specific issues in this appeal.

Appellant's first issue is that certain statements he made to Wichita police officers should have been suppressed. When appellant was taken into custody at approximately 6:00 p.m., he was advised of his *Miranda* rights and when asked if he wished to talk responded "no" on the form furnished to him. At that time

no further questions were asked and appellant was left alone in a police department room, handcuffed and shackled to a table.

About two to two and one-half hours later, two other officers entered the room. Appellant was again read his *Miranda* rights and again he responded that he wished to remain silent. The only questions asked were whether he wanted to go to the bathroom and whether he wanted any food. Appellant responded "no". After thirty to sixty seconds of silence elapsed, the appellant suddenly started talking. In essence, he volunteered the information that he had smothered his daughter. He then asked if she was dead. When the officers advised that she was, appellant stated, "I need to talk to a lawyer." No further conversation took place and the officers left the room.

Appellant filed a motion to suppress the incriminating statements, and the court held a *Jackson v. Denno* hearing to determine their admissibility. Although the appellant was distraught and upset over the death of his daughter, there was no evidence of coercion by the officers. The trial court determined that the appellant's statements were admissible. When the trial court determines at a hearing that a defendant's extrajudicial confession or admission was freely, voluntarily, and intelligently made and admits the statement into evidence, the appellate court will not reverse that determination if it is supported by substantial competent evidence. *State v. Waugh*, 238 Kan. 537, 541, 712 P.2d 1243 (1986); *State v. Lilley*, 231 Kan. 694, Syl. ¶ 6, 647 P.2d 1323 (1982); *State v. Thompson*, 221 Kan. 165, Syl. ¶ 2, 558 P.2d 1079 (1976). The trial court's decision was clearly supported by substantial competent evidence and the issue lacks merit.

The remaining issues raised by the appellant all challenge various jury instructions. Jury instructions are to be considered together and read as a whole, without isolating any one instruction. *State v. Jones*, 233 Kan. 112, 115, 660 P.2d 948 (1983), and cases cited therein. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Jones*, 233 Kan. at 115.

Appellant's defenses at trial included assertions of insanity and diminished capacity. He first argues that the trial court incorrectly instructed the jury on the sequential analysis to be followed in considering whether the defendant should be found

not guilty by reason of insanity. Appellant argues that the instruction given denied him due process and equal protection. The challenged instruction reads as follows:

"INSTRUCTION NO. 11

"In the first instance you must decide if the State has proven each element of each count, beyond a reasonable doubt. If you find that they have not, then your verdict should be not guilty of the particular count you find not proven. If, on the other hand, you find the particular count proven, then you must decide if the defendant was sane or insane at the time of the commission of the offense in each count. If you find that he was insane at the time, then your verdict should be 'not guilty by reason of insanity.' If you find that he was sane at the time and that the State has proven each element of the particular count, beyond a reasonable doubt, then your verdict should be guilty of that crime upon which you all agree."

Appellant made no objection to the instruction at trial, and therefore the giving of the instruction cannot be reversible error unless it is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict. *State v. Patterson*, 243 Kan. 262, 268, 755 P.2d 551 (1988); *State v. Stafford*, 223 Kan. 62, Syl. ¶ 2, 573 P.2d 970 (1977).

The appellant relies solely upon the following language in *State v. Jackson*, 238 Kan. 793, 798, 714 P.2d 1368, *cert. denied* 479 U.S. 821 (1986):

"Where insanity is relied upon, the jury must first determine that issue. If it finds the defendant sane, it may then consider, where appropriate, evidence of diminished capacity as a defense to a crime requiring proof of a specific intent."

Appellant contends that the instruction in this case required the jury to follow the opposite sequence from that "directed" in *Jackson*. We do not agree. The statement from *Jackson* is taken out of context and does not support appellant's argument.

In *Jackson*, the issue was whether the jury should have been instructed on the defense of diminished capacity. Our previous cases had rejected the doctrine in name, but had effectively adopted it by holding that evidence of a mental defect was admissible to negate the specific intent element, if any, of the crime charged. In *Jackson*, this court recognized that the doctrine of diminished capacity had indeed been adopted as part of our criminal law. The *Jackson* quote extracted by the appellant must be read in context to appreciate its meaning:

"Thus it is apparent we have adopted the doctrine of diminished capacity in spite of our past disclaimers. Evidence of diminished capacity is admissible only for the limited purpose of negating specific intent and is not a substitute for a plea of insanity. Where insanity is relied upon, the jury must first determine that issue. If it finds the defendant sane, it may then consider, where appropriate, evidence of diminished capacity as a defense to a crime requiring proof of a specific intent. Whether the jury should be instructed on diminished capacity is left to the sound discretion of the trial court. Here the court gave PIK instructions on intent, lesser included offenses and epilepsy. We consider the instructions in this case adequate to apprise the jury of appellant's case. We find no error." 238 Kan. at 798.

Contrary to appellant's argument, *Jackson* did not hold that the issue of the defendant's sanity must be decided *before the jury determines whether the State has proven the necessary elements of an offense beyond a reasonable doubt.* The instruction given in this case protected appellant by requiring that the jury first decide whether the State had met its burden of proof on any of the offenses for which he could have been convicted. Had the jury first considered the sanity issue and determined that appellant was legally insane at the time of the homicide, it could conceivably have reached a verdict of "not guilty by reason of insanity" even if the State had not proved each of the necessary elements of the offense. Such a result would clearly violate a defendant's rights. The instruction given was not erroneous and this issue lacks merit.

The appellant next challenges the district court's refusal to give a separate instruction on diminished capacity. The defense requested such an instruction at trial, but the trial court denied the request. In *Jackson* this court stated unequivocally that the determination of whether to give a separate jury instruction on diminished capacity is left to the sound discretion of the trial court. 238 Kan. at 798. In *State v. Maas*, 242 Kan. 44, 744 P.2d 1222 (1987), the court again considered the doctrine of diminished capacity and the need for an instruction when it is asserted by a defendant. The court, in reliance on *Jackson,* found that, while evidence of diminished capacity is admissible in a prosecution involving a specific intent crime, the trial court is not required to give a separate instruction on diminished capacity. 242 Kan. 44, Syl. ¶ 3.

This issue is controlled by our recent decisions in *Maas* and *Jackson.* We find no abuse of discretion by the trial court.

For his fourth and final argument, appellant contends that the

trial court erred in failing to give his requested instruction on the test for determining legal insanity. The instruction given reads as follows:

"INSTRUCTION NO. 10

"The defendant's plea to the charges against him is not guilty by reason of insanity. Whether or not Charles W. Morris was insane at the time the crimes charged were committed is a question that you the jury must decide. You should consider all of the evidence admitted in light of these instructions of law.

"The legal test that you must use in arriving at your decision is this: If at the time the crimes were committed the defendant's mental capabilities were so affected by mental disease or defect that he did not understand the nature and quality of his criminal acts or if he was so affected, at the time, that he was not able to distinguish between right and wrong, then the law provides that he is not criminally responsible for his acts. *This is so because one who lacks the mental capacity to distinguish right from wrong is incapable of forming the necessary criminal intent required for conviction of crime.*

"If you have a reasonable doubt as to the mental capacity of the defendant at the time of the alleged commission of the offenses, then you should find the defendant not guilty because of insanity.

"A person found not guilty because of insanity is committed to the State Security Hospital for safekeeping and treatment until discharged according to law." (Emphasis added.)

Appellant objected to the instruction at trial and requested that the court give PIK Crim. 2d 54.10. He contends that the instruction, as given, failed to make it clear that the test for legal insanity provides two alternative findings, and that an affirmative result on either is enough to reach a verdict of not guilty by reason of insanity.

In *State v. Wilson*, 240 Kan. 606, 731 P.2d 306 (1987), this court considered the failure of the trial court to give a PIK instruction and stated:

"Kansas has been a leader in the preparation and publication of pattern jury instructions, both civil and criminal, for the assistance and guidance of the bench and bar. The committee on Pattern Jury Instructions of the Kansas District Judges' Association first published pattern jury instructions for use in the trial of civil cases in 1964, and revisions of that original work have been published regularly since then. Similarly, Pattern Criminal Jury Instructions have been prepared by the same committee, serving as an Advisory Committee on Criminal Jury Instructions to the Kansas Judicial Council. Pattern Criminal Jury Instructions were first published in 1971, and these are now published in loose-leaf form and are updated annually. The advisory committee and the Kansas Judicial Council, whose membership includes many distinguished Kansas judges and lawyers, have produced a work of invaluable assistance. Reversals and the necessity of new trials in criminal cases because of error in the jury instructions

are now quite rare because of the clarity and correctness, and the widespread use, of the Pattern Criminal Jury Instructions.

"When pattern jury instructions are appropriate, a trial court should use them unless there is some compelling and articulable reason not to do so. A trial court, in the press of a busy trial, cannot possibly do the research and give the thought to each jury instruction that has gone into the preparation of pattern instructions by the advisory committee." 240 Kan. at 609-10.

We agree with appellant that the instruction given lacks the clarity of PIK Crim. 2d 54.10 and it would have been better to have used the PIK instruction. However, we do not find that the instruction as given, when read in conjunction with the other instructions, is so misleading or confusing as to constitute reversible error.

The judgment is affirmed.