(857 P.2d 1362)

No. 67,783 [1]

JACK D. BOEGEL, d/b/a BOEGEL FARMS, *Appellant*, v. COLORADO NATIONAL BAND OF DENVER, a national banking association, *Appellee*.

Opinion filed March 5, 1993.

*Steve A. Miller,* of Steve A. Miller, P.C., of Denver, Colorado, and *E. Edward Brown,* of Calihan, Brown, Osborn, Burgardt & Wurst, of Garden City, for the appellant.

*Richard D. Ewy,* of Foulston & Siefkin, of Wichita, for the appellee.

Before LEWIS, P.J., JOHN C. GARIGLIETTI, District Judge, assigned, and DONALD L. WHITE, District Judge Retired, assigned.

WHITE, J.: Jack D. Boegel appeals the jury's denial of his claim of fraudulent concealment in the purchase of a farm containing 21 center-pivot irrigation systems. Boegel claims the Colorado National Bank of Denver (Bank) wrongfully withheld information concerning defects in the irrigation wells on the farm. Boegel claims the trial court erroneously denied his motion for directed verdict and also erroneously instructed the jury on the elements of fraudulent concealment.

Boegel is an experienced irrigation farmer who had operated a center-pivot irrigated farm in Colorado since 1976. Also an experienced businessman, Boegel operated a seed and fertilizer business and a custom farming business in addition to his farm.

Boegel liked the area around Lakin, Kansas, and learned that, near there, the Bank was offering for sale a 3,800 acre farm called the Wilmar Farm. In March 1989, George Kerst, a consultant hired to do inspections for the Bank, and Darris Cumming, a real estate agent, took Boegel to the Wilmar Farm. Kerst drove Boegel around to all of the pivots and pointed out that irrigation well 17 was bad and that well 11 needed to be reworked. Boegel testified that when he asked Kerst, "[W]hat else is there?", Kerst replied that the rest of the wells were in "good shape."

After the Bank rejected Boegel's first offer, made in April 1989, negotiations resumed the next month when Boegel and his accountant began meeting with the Bank's vice-president, Gary Cogburn, and the Bank's representative, George Kerst. The parties did not discuss the need to redrill or repair any irrigation wells other than well 17.

Before signing the agreement, Boegel drove through the Wilmar Farm three or four times, and the irrigation system was operating on some of these occasions. While a center pivot system is operating, it is possible to determine whether a pump is pumping air or sand. Such a test takes about 15-20 minutes for each pump. Boegel did not do any such tests. He did not talk to the tenants on the farm, the drillers, or anyone who worked on the property. Boegel did not feel it was appropriate to do tests or discuss the irrigation system with the tenants because he did not yet have an agreement with the Bank. Boegel did not ask anyone about the age or life expectancy of the wells before buying the

property. Boegel and Cogburn signed a purchase agreement on June 19 and 20, 1989, respectively.

The purchase agreement provided that, from the date of delivery of the earnest money through June 30, 1989, Boegel was allowed to conduct any inspections he deemed necessary and to terminate the agreement without cause. The agreement also included the following language:

"BUYER acknowledges purchasing hereunder based on BUYER'S inspection and not upon any express or implied warranty or representation made by SELLER or SELLER'S agents, it being specifically agreed that the Premises and all irrigation equipment thereon, including, but not necessarily limited to engines, pumps, gearheads and center pivot sprinklers being sold 'as is where is.' "

After signing the purchase agreement, Boegel and his family inspected the surface equipment at each pivot. The pumps were not running at the time. Boegel did not talk to the tenants until June 30, when Kerst introduced him to the tenant farmers. At that meeting, Boegel did not ask any specific questions about the condition of individual wells, except well 17.

After the deal closed in July 1989, Boegel again visited with the tenants. One of the tenants asked Boegel if the Bank had shown him a "well list" that the tenant had prepared in December 1988. The Bank had not. The list stated well 3 was "poor"; well 4 pumped gravel; well 5 pumped air; well 14 pump pulled hard; well 16 pumped only 550 gpm; and well 18 pumped air at 60 psi.

At trial, the evidence indicated that the Bank knew about the "well list." The Bank characterized the "well list" as a record of the tenant's opinion regarding the condition of the wells. It had used the list at a December 1988 hearing when it sought to have a receiver appointed pending the foreclosure of the mortgage on the farm. The list was not admitted at the receivership hearing; instead, the tenant testified about the condition of the wells. He testified that in his opinion only two wells, well 3 and well 17, needed to be redrilled for maximum production. That remained the tenant's opinion after the sale of the farm to Boegel. There also was evidence that before the sale to Boegel the tenants told the Bank's vice president, Cogburn, that wells 3 and 17 needed to be redrilled.

There also was evidence at the trial that before the sale to Boegel the Bank's representative, Kerst, had made notes about problems with some of the wells. At the time of the sale of the farm to Boegel, those notes were in the Bank's file kept by the vice president. The notes indicated that most of the wells were "okay" to "excellent," but that well 3 had a hole in the casing, well 4 might have a hole in the casing and pumped gravel, and that well 17 was "bad." Kerst's notes designated wells 11, 16, and 18 with a question mark. The Bank's appraiser's report also reported problems with wells 3, 4, and 10.

First, Boegel claims the trial court erred when it denied his motion for directed verdict made at the close of the evidence. We agree with the trial court in its ruling. When viewing a motion for directed verdict, the trial court must

"consider the evidence in a light most favorable to the opposing party. [Citation omitted.] The court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion and if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury. [Citations omitted.]" *Traylor v. Wachter*, 227 Kan. 221, .228, 607 P.2d 1094 (1980).

The same rules govern appellate review of a trial court's ruling on a motion for directed verdict. *Apperson v. Security State Bank*, 215 Kan. 724, 732-33, 528 P.2d 1211 (1974); *Fisher v. Sears, Roebuck & Co.*, 207 Kan. 493, 495, 485 P.2d 1309 (1971).

Boegel claims that the Bank concealed the truth about irrigation wells on the property and that the concealment amounted to fraud. Concealment of the truth is not always actionable fraud. *Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987). "There must be a concealment of facts which the party is under a legal or equitable duty to communicate and in respect of which he could not be innocently silent." 240 Kan. at 389. See *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 759, 576 P.2d 674 (1978); *Griffith v. Byers Construction Co.*, 212 Kan. 65, 71, 510 P.2d 198 (1973).

The duty may exist between two contracting parties "when there is a disparity of bargaining powers or of expertise." *DuShane*, 223 Kan. at 760. Boegel did not claim at trial, and does

not claim on appeal, that there was a disparity in bargaining power between him and the Bank. If there was a disparity in expertise about irrigation farming, the disparity was that Boegel had greater expertise than the Bank. He was an experienced irrigation farmer.

A seller may have a duty to disclose information about a material defect if he or she "has knowledge of a defect in property which is not within the fair and reasonable reach of the vendee . . . and which [the vendee] could not discover by the exercise of reasonable diligence." *Green v. Geer,* 239 Kan. 305, 308, 720 P.2d 656 (1986). This case does not involve a material defect that Boegel could not have discovered by the exercise of reasonable diligence. It would have been reasonable for Boegel to inspect the irrigation equipment while it was operating and to ask questions about the wells. The contract expressly provided that Boegel agreed to buy the property based upon the results of his own inspection and not based on any express or implied warranty or representation made by the Bank. Boegel did not claim that he lacked sufficient time to inspect the property or that the tenants or the Bank were uncooperative when he tried to inspect the property.

A party to a transaction also has a duty to disclose material facts if he or she "'knows that the other is about to enter into the transaction under a mistake as to such facts, and that the other, because of the relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of such facts.' " *Griffith,* 212 Kan. at 71.

We find that reasonable persons could differ as to whether the Bank really "knew" that Boegel was "mistaken" about the wells. Cogburn, vice-president of the Bank, testified that he had conflicting information about the condition of the wells and that he had not yet been able to confirm for himself the condition of the wells. Accordingly, he left it to Boegel to determine the condition of the wells for himself because he perceived Boegel as more knowledgeable in such matters.

Even if the Bank did know that Boegel was "mistaken," reasonable persons could differ about whether Boegel, " 'because of the relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of

such facts.' " 212 Kan. at 71. Although the evidence was limited, the evidence of custom and practice was that people who were buying irrigated farmland conducted their own inspections. Moreover, the contract required Boegel to rely on his own inspections rather than the Bank's express or implied representations.

Boegel cites *Fox v. Wilson*, 211 Kan. 563, 507 P.2d 252 (1973), in support of his claim that he had no duty to conduct any inspection. In *Fox*, the sellers intentionally made material false representations to the buyers, materially changed the sales contract without notice to the buyers, affirmatively concealed the true status of the title to the property, and misrepresented a need to expedite completion of the transaction. The seller in *Fox* not only lied to the buyer, but also dissuaded the buyer from making inquiries and expedited the completion of the transaction.

The facts of the present case are distinguishable. Boegel does not claim that the Bank affirmatively misrepresented the condition of the wells. Moreover, the contract required Boegel to conduct his own inspection and not rely on the Bank.

Boegel also cites extensively *State ex rel. Stephan v. GAF Corp.*, 242 Kan. 152, 747 P.2d 1326 (1987). Boegel claims that *GAF Corp.* supports his contention that he had no duty to investigate unless he was on notice that the Bank was withholding material information. *GAF Corp.* concerned a fraud claim arising out of the State's reliance on a roofing material manufacturer's specifications. The specifications allegedly omitted information about a known defect. In *GAF Corp.*, the pertinent issue was whether the district court committed reversible error when it omitted the word "reasonably" before the words "relied upon" in the instruction to the jury on the elements of fraud. In holding that there was no reversible error, the Supreme Court noted that "[t]here was no evidence that any of those persons had other information which would make them question the published specifications." 242 Kan. at 158-59. Boegel seizes upon this language in support of his claim that he had no duty to investigate, absent reason to know the Bank was withholding information.

In *GAF Corp.*, however, the reasonableness of the State's reliance on the specifications was not at issue. The court stated: "There was absolutely no issue at trial but that the State, through its architects and contractors, had every right to rely upon GAF's

published specifications. There was no claim that those should *not* have been relied upon." 242 Kan. at 158.

In contrast, the reasonableness of Boegel's reliance on the Bank to disclose information about the wells was a key issue in the present case. Again, the contract required that Boegel not rely on the Bank's express or implied representations; the contract required Boegel to purchase the property based upon his own inspection.

We find the evidence produced at trial was of such character that reasonable persons could reach different conclusions whether Boegel proved that the Bank fraudulently concealed material information. We find the trial court properly denied Boegel's motions for directed verdict and judgment notwithstanding the verdict.

Boegel next claims the trial court erred when it modified PIK Civ. 2d 14.42 (1992 Supp.). PIK Civ. 2d 14.42 (1992 Supp.) provides:

"The plaintiff claims fraud through silence on the part of the defendant. To constitute fraud by silence the plaintiff must prove:
1. The defendant has knowledge of material facts which plaintiff did not have and which the plaintiff could not have discovered by the exercise of reasonable diligence;
2. The defendant was under an obligation to communicate the material facts to the plaintiff;
3. The defendant intentionally failed to communicate to plaintiff the material facts;
4. The plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and
5. The plaintiff sustained damages as a result of the defendant's failure to communicate this to the plaintiff.
"A fact is material if it is one to which a reasonable man would attach importance in determining his choice of action in the transaction in question.
"*A party is justified in relying without investigation upon another to communicate the facts material to a transaction unless he knows or has reason to know of facts which make his reliance unreasonable.*" (Emphasis added.)

In its Instruction No. 18, the district court instructed the jury in accordance with PIK Civ. 2d 14.42 (1992 Supp.), except that it omitted from PIK Civ. 2d 14.42 (1992 Supp.) the language emphasized above and substituted the following:

"A benefit to defendant or detriment to plaintiff is relevant as to whether defendant withheld a fact or an opinion.

"The factors to be considered in determining whether information is a fact and whether or not the plaintiff had a right to reasonably rely on defendant to communicate material facts to plaintiff include the intelligence, education, business experience and relative situations of the parties; the general information and experience of the parties as to the nature and use of the property; the habits and methods of those in the industry or profession involved; the opportunity of both parties to make an independent investigation as well as the nature, extent and result of any investigation so made, and any contract the parties knowingly and understandingly entered into."

Boegel is correct that the Supreme Court has stated, in dicta, that "[w]hen pattern jury instructions are appropriate, a trial court should use them unless there is some compelling and articulable reason not to do so." *State v. Wilson,* 240 Kan. 606, 610, 731 P.2d 306 (1987). Our Supreme Court has also approved a trial court's use of modified PIK instructions. See, *e.g., Cricket Alley Corp. v. Data Terminal Systems, Inc.,* 240 Kan. 661, 665-66, 732 P.2d 719 (1987).

"A trial court has discretion in giving instructions to the jury and, on appeal, the instructions should be approved if, after being considered in their entirety, they properly and fairly state the law as applied to the facts in the case." *State v. Graham,* 244 Kan. 194, 206, 768 P.2d 259 (1989). See *State v. Morris,* 244 Kan. 22, 23, 765 P.2d 1120 (1988). If substantially correct and the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error. *Trout v. Koss Constr. Co.,* 240 Kan. 86, 88-89, 727 P.2d 450 (1986).

The paragraph the trial court deleted from PIK Civ. 2d 14.42 (1992 Supp.) could have misled the jury on the facts presented in this case. Both PIK Civ. 2d 14.42 (1992 Supp.) and Instruction No. 18 given by the trial court require the plaintiff to prove that "[t]he defendant has knowledge of material facts which plaintiff did not have *and which the plaintiff could not have discovered by the exercise of reasonable diligence."* (Emphasis added.) This is consistent with the case law, but, on the facts of this case, it is not consistent with the paragraph the trial court deleted from PIK Civ. 2d 14.42 (1992 Supp.): "A party is justified in relying without investigation upon another to communicate the facts ma-

terial to a transaction unless he knows or has reason to know of facts which make his reliance unreasonable."

The paragraph the trial court deleted states that a plaintiff need not investigate unless he is on notice that information is being withheld. On the facts of this case, reasonable diligence required more because the contract imposed upon the buyer a duty to inspect and to rely on his own inspection rather than upon the seller's express or implied representations. The court properly modified PIK Civ. 2d 14.42 (1992 Supp.).

The Bank suggests that we may affirm the judgment on an alternative basis. The Bank claims that the trial court should not have allowed Boegel to proceed to trial on his fraudulent concealment claim because the terms of the contract placed on Boegel the burden to investigate the property. We note that our Supreme Court has commented on the importance of the bargained-for duties and bargained-for liabilities created by contract. See *Ford Motor Cred. Co. v. Suburban Ford,* 237 Kan. 195, 203, 699 P.2d 992, *cert. denied* 474 U.S. 995 (1985). In *Ford Motor Cred. Co.,* the court emphasized that " '[t]he effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for—limited liability.' " 237 Kan. at 203.

In the present case, the Bank bargained for limited liability, and Boegel contractually assumed a duty to inspect the property. Given the terms of the contract, to allow Boegel to proceed to trial on his claim of fraudulent concealment seems to nullify the limited liability for which the Bank bargained.

Because we find that the trial court did not err in denying plaintiff's motion for directed verdict or in modifying the PIK instruction, we need not reach this issue.

Affirmed.

LEWIS, J., concurring: I concur in the result achieved by the majority opinion and in the reasoning by which that result is reached.

I am convinced, however, that the key to this action is the agreement between the parties. The contract required Boegel to accept the property "as is where is." It specifically provides that

Boegel was to rely on his own inspection and not "upon any express or implied warranty or representation" made by the Bank. It was the failure of Boegel to rely on his own inspection which placed him in his present position. It was absolutely unreasonable for Boegel to have expected the Bank to disclose any information to him under the circumstances. Boegel got what he bargained for; he got the property, wells, pumps, etc., "as is where is." He has no room whatsoever for complaint.

I would affirm the decision in favor of the Bank on the basis of the agreement between the parties. This may be an application of the "right for the wrong reason" doctrine, but it seems to me to be an inescapable conclusion.

Indeed, I would suggest that the Bank was entitled to a directed verdict on the basis of the agreement between the parties. There can be no viable cause of action for fraudulent concealment in the face of the "as is where is" provisions of the contract.

Counsel for Boegel argued that a decision affirming the verdict for the Bank would reinstate the doctrine of "caveat emptor." In my opinion, any bargain which requires a buyer to rely on his own inspections is a contract which requires the buyer "to beware." It is inconceivable to me that a buyer who has negotiated a bargain of this nature could complain about a failure to disclose facts where he is required to rely on his own inspections and then conducts none.

In my opinion, the agreement between the parties is totally inconsistent with a viable claim of fraudulent concealment on the part of the buyer.