No. 46,732

PHILLIP C. GRIFFITH and HARRIET A. GRIFFITH, *Appellants,* v. BYERS CONSTRUCTION CO. OF KANSAS, INC., *Appellee.*

(510 P. 2d 198)

Opinion filed May 12, 1973.

*Herbert H. Hopper,* of Wichita, argued the cause and was on the brief for the appellants.

*Phillip Mellor,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The purchasers of new homes in Woodlawn East Addition, City of Wichita, Kansas, brought separate actions for damages because of the saline condition of the soil of their homesites. These actions were filed on alternative theories, (1) breach of an implied warranty of fitness and (2) fraud in the concealment of a material matter. The actions were brought against the developer.

This appeal is from an order granting summary judgments in favor of the developer, Byers Construction Co. of Kansas, Inc. (Byers).

The petitions allege that Byers developed and advertised the addition as a choice residential area. Prior to the time of development the addition was part of an abandoned oil field which contained salt water disposal areas which Byers knew or should have known would not sustain vegetation because of the saline content of the soil. It was alleged that Byers graded and developed the whole addition for homesites in such a manner that it became impossible for a purchaser to discover the presence of these salt areas. It further appears from allegations in the petitions and testimony in depositions that each of the plaintiffs selected a homesite which was located within a salt water disposal area. After houses were constructed attempts to landscape the homesites failed. Grass, shrubs and trees were planted and died because of the saline content of the soil.

Three separate actions were filed in the court below, one by Charles H. Reichart, a second by George M. and Linda M. Parsons and the third by Phillip C. and Harriet A. Griffith. These actions were consolidated in the district court and it was understood pleadings and orders in all three cases would be filed in the Griffith case. Thereafter motions for summary judgments were filed and the district court entered summary judgments in favor of the defendant Byers in all three cases. This appeal followed.

These additional allegations or facts, gleaned from the pleadings and depositions, should be noted. The purchase of the homesites and the construction of the homes was handled in this manner. Each prospective homeowner contracted with a separate building contractor to construct a home on a homesite to be chosen by the owner. The homesites in Woodlawn East Addition were advertised by the developer and considered to be in a restricted residential area developed for choice homes. Each prospective homeowner picked out a homesite without personally consulting the developer Byers but each was influenced by billboard advertising and by the general reputation of the area. When a homesite was chosen the respective building contractor then purchased the lot. The contractors obtained warranty deeds from Byers. When the houses were completed in accordance with specifications titles were transferred and the homeowners then received deeds to the improved homesites. No inquiry was made and no assurance was given by Byers on soil fertility.

The facts of this case appear to be unique for, although many cases can be found on a vendor-builder's liability for the sale of a defective home (see 25 A. L. R. 3d, p. 383), no cases are cited and we find none which discuss a developer's liability for defects arising from sterility of soil. The saline content of the soil of these homesites does not affect the structural qualities of the homes. The allegations of the petitions and deposition testimony indicate that landscaping is either impossible or highly expensive.

The appellants contend there is or should be an implied warranty on the part of the developer of homesites that the soil will sustain grass, shrubs and trees. They argue there is no reasonable distinction between implied warranties in product liability cases and in cases involving the sales of developed homesites. In either case an implied warranty of fitness for use should attach, they argue, to the product sold. We cannot agree.

In product liability cases the manufacturers and the vendors are dealing in products which may be dangerous to the personal health of the public. There is imposed a special liability for the protection of the health of consumers. In such cases the implied warranty does not arise from any particular transaction or agreement, but is imposed by operation of law on the basis of public policy for the protection of the health, safety and welfare of the public. (*Chandler v. Anchor Serum Co.*, 198 Kan. 571, 579, 426 P. 2d 82.) Any injury in the present case arises from sterility of the soil and is to the pocketbook, not to the person.

Appellee-Byers points out that cases cited by the appellants involve construction of houses in an unworkmanlike manner by a builder who sells to a purchaser. The defects complained of are generally in the nature of sewer trouble, water in the basement or structural defects which affect the quality of the structure sold. The implied covenants recognized in such cases arise from the terms, conditions and nature of the construction contract entered into between the contractor and the homeowner. Byers points out he is only a developer selling vacant homesites. There appears to be some distinction.

We have two cases which touch on the liability of a vendor-builder for defects in construction, *Lawrence v. Sloan*, 201 Kan. 270, 440 P. 2d 626, and *McFeeters v. Renollet*, 210 Kan. 158, 500 P. 2d 47. However, neither case is decided on the basis of implied warranty of fitness and neither involves a defect in soil fertility. In *McFeeters* this court quoted from 25 A. L. R. 3rd, p. 391, as follows:

" 'It has been noted that while most courts still adhere to the proposition that in the usual, normal sale of lands and old buildings the ancient doctrine of caveat emptor applies, the decided trend of modern decisions is to make a distinction with respect to a vendor who is also the builder of a new structure, . . . ' " (210 Kan. p. 165)

The above quoted portion of the opinion is of interest but not controlling for the decision was based upon a failure to comply with FHA specifications incorporated in a construction contract. The case did not turn on an implied warranty and is not in point.

A contract between a purchaser and vendor-builder contemplates more than the mere transfer of title to real estate; it contemplates the construction of a structurally sound building. The rationale for the implication of a warranty in the vendor-builder cases is that when a vendee buys a development house from plans and specifications he clearly relies on the skill and integrity of his builder. He relies on the builder to erect the house in a workman-like manner and to furnish a completed house reasonably suited for habitation. In the present case the soil defect does not affect the structural quality of the dwelling. Therefore the defect relates only to the real estate, the fertility of the soil.

The sales of the homesites in the present cases were accomplished by delivery of ordinary warranty deeds. There is a presumption that when a deed is prepared, executed and delivered by a grantor and accepted by a grantee any contract is merged in the deed. (*Palmer v. The Land & Power Co.*, 172 Kan. 231, Syl. ¶ 2, 239 P. 2d 960.) The record fails to disclose the existence of any contract in this case. The warranty claimed could not be based on an intention of the parties implied from the nature and terms of a purchase agreement. Any warranty of soil quality would have to be implied by operation of law. This being so, any warranty as to soil quality in this case would have to be imposed or created by law on the ground that such a warranty is dictated by reason and justice. The deeds are referred to as ordinary warranty deeds.

K. S. A. 58-2203 provides for the basic requirements of a warranty deed in Kansas. The statute indicates that when certain statutory requirements are complied with specific warranties of title and possession are implied. The statute provides:

"Any conveyance of lands, worded in substance as follows: A. B. conveys and warrants to C. D. (here describe the premises), for the sum of (here insert the consideration), the said conveyance being dated, duly signed and acknowledged by the grantor, shall be deemed and held a conveyance in fee simple to the grantee, his or her heirs and assigns, *with covenants from the*

*grantor, for himself and his heirs and personal representatives, that he is law-fully seized of the premises, has good right to convey the same and guarantees the quiet possession thereof, that the same are free from all encumbrances, and he will warrant and defend the same against all lawful claims.*" (Emphasis added.)

Implied covenants provided for by the statute are thus limited, and when express covenants are placed in a deed additional covenants can not be implied from facts or circumstances surrounding the execution and delivery of the deed. (*Duvanel v. Sinclair Refining Co.*, 170 Kan. 483, Syl. ¶ 1, 227 P. 2d 88, 23 A. L. R. 2d 649; cf. *Williams v. Safeway Stores, Inc.*, 198 Kan. 331, Syl. ¶ 1, 424 P. 2d 541.) Implied covenants or warranties as to land are not favored and the tendency of modern decisions is not to imply covenants which might and ought to have been expressed by the parties if intended. (20 Am. Jur. 2d, Covenants, Conditions, Etc., § 12, p. 584; 21 C. J. S., Covenants, § 9, p. 888.)

In *Nelson v. Darling Shop of Birmingham, Inc.*, 275 Ala. 598, 157 So. 2d 23, it is said:

"Implied covenants are not favored. . . . When allowed, an implied covenant must be gathered from terms actually expressed in the instrument, and it must appear that such implication was so clearly within the contemplation of the parties that it was deemed unnecessary to express it . . ., and covenants which should have been expressed if so intended by the parties will not be implied. [Citation omitted.]" (p. 608)

No such warranty was intended in the present case.

A real estate developer by subdividing and offering lots for sale as choice residential homesites does not by implication warrant the fertility of the soil of said lots. Liability on an implied warranty of soil fertility cannot reasonably be imposed upon the real estate developer in this case. The delivery and acceptance of the warranty deed negates warranties not expressed in the deed or implied by law under K. S. A. 58-2203. The trial court properly held there was no implied warranty of soil fertility on which plaintiffs might maintain their actions.

Our next inquiry is directed to the claims based on fraud. The trial court held as a matter of law no claims for fraud could be maintained because of lack of privity between the developer and these appellants. The residential lots were sold to the builders who in turn constructed the houses and then deeded the improved lots to the appellants.

In support of the trial court's holding the appellee, Byers, contends not only was there a lack of privity but that the appellants

wholly failed to produce any evidence to support their claim of fraud. We will examine the evidence question first.

It is noted the judgments of the court were based on a determination of three questions of law: (1) Nonexistence of an implied warranty of soil fertility; (2) Lack of privity in the fraud claims, and (3) The two year statute of limitations on fraud. We have answered the first question. As to the second question we do not believe the record conclusively establishes the inability of the appellants to support their charges of fraud nor did the trial court dispose of the motion on that ground. It is true the appellants and the builders stated in their depositions they had talked to no one who said the appellee Byers knew the soil of the lots was incapable of growing vegetation. However, this does not mean they had no evidence to support their claim of fraud. It was alleged in the petitions that appellee Byers developed the area and at that time the salt water disposal areas were apparent, that Byers knew or should have known of their nature and presence, that it graded the whole addition and the areas thereafter became latent, and that appellee was guilty of fraud in failing to disclose the presence of the salt areas to appellants. Byers' knowledge of the defect did not depend on testimony of appellants and the contractors. Fifteen other witnesses were listed by appellants in the pretrial order.

A summary judgment proceeding is not a trial by affidavits or depositions and the parties are entitled to trial when there is a good faith dispute of facts. (*Brick v. City of Wichita*, 195 Kan. 206, 210, 403 P. 2d 964.) Any doubt as to the existence of an issue of fact must be resolved against the movant and the opponent's evidence is entitled to the benefit of all reasonable inferences. (*Schneider v. Washington National Ins. Co.*, 200 Kan. 380, 387, 437 P. 2d 798; and *Harter v. Kuntz*, 207 Kan. 338, 343, 485 P. 2d 190.)

The allegations of fraud appear to be viable issues for trial if nondisclosure of a known material defect in the lots constitutes actionable fraud as to the appellants.

This court has held that the purchaser may recover on the theory of fraud from a vendor-builder for nondisclosure of defects. In *Jenkins v. McCormick*, 184 Kan. 842, 339 P. 2d 8, it is stated:

"Where a vendor has knowledge of a defect in property which is not within the fair and reasonable reach of the vendee and which he could not discover by the exercise of reasonable diligence, the silence and failure of the vendor to disclose the defect in the property constitutes actionable fraudulent concealment." (Syl. 1.)

(Also see generally *Nairn v. Ewalt*, 51 Kan. 355, 32 Pac. 1110.)

This *Jenkins* rule approximates that stated in Restatement, Second, Torts, § 551 (Ten. Draft No. 12, 1966):

"(1) One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter which he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to disclose to the other before the transaction is consummated.

. . . . . . . . . . . . . .

"(e) Facts basic to the transaction, if he knows that the other is about to enter into the transaction under a mistake as to such facts, and that the other, because of the relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of such facts."

A similar rule has been recognized in other states. See *Bethlahmy v. Bechtel*, 91 Idaho 55, 415 P. 2d 698, where a drainage ditch underlay a garage and was not disclosed to the purchaser. See also *Buist v. C. Dudley DeVelbiss Corp.*, 182 Cal. App. 2d 325, 6 Cal. Rptr. 259; *Cohen v. Vivian*, 141 Colo. 443, 349 P. 2d 366, where there was a failure by vendors to disclose that the homes sold were built on filled land and subsidence of the land damaged plaintiffs' homes. Many such cases are collected in 80 A. L. R. 2d 1453. We see no reason why the rule in *Jenkins* should not be extended in the present case to a developer of residential lots.

The appellee Byers next contends, without agency, there can be no privity and without privity there can be no duty to disclose. Here, of course, appellants never dealt with the appellee, Byers. The duty to disclose the saline nature of the soil must extend to appellants if their fraud claims are to be upheld. However, the doctrine of privity provides no defense to appellee Byers if appellants were within a class of persons appellee intended to reach. Liability for misrepresentation is not necessarily limited to the person with whom the misrepresenter deals. The rule is embodied in Restatement, Second, Torts, § 531 (Ten. Draft No. 10, 1964):

"One who makes a fraudulent misrepresentation is subject to liability for pecuniary loss

"(a) To the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation; and

"(b) For pecuniary loss suffered by them through their reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced."

Liability may exist in a situation similar to that of the present case without a specific finding of agency. In *Massei v. Lettunich*, 248 Cal. App. 2d 68, 56 Cal. Rptr. 232, Lettunich owned hillside property and in the course of laying out lot plans for a residential subdivision had the land filled. An engineering firm advised him regarding the depth to which the foundation should be laid to insure safety. Without informing a builder of the engineering report or that the land had been filled, Lettunich sold the land to the builder. Massei and others purchased homes from the builder and were damaged when the filled dirt subsided. The court found that the ultimate purchasers could recover from Lettunich because of the nondisclosure. In the opinion it was stated:

"The contention of Lettunich that he had no contact with appellants and that therefore it was impossible for him to be guilty of deceit toward them is without merit. 'The law is well settled that "representations made to one person with intention that they will be repeated to another and acted upon by him and which are repeated and acted upon to his injury gives the person so acting the same right to relief as if the representations had been made to him directly."' [Citations omitted.] No reason appears why this same rule should not be applicable to nondisclosures as well as misrepresentations. The jury could easily have found that Lettunich, in failing to disclose to the Trents that the lots had been filled, did so because he was fearful that the prospective purchasers would in turn learn that fact and be dissuaded. . . ." (p. 73.)

In *Anderson v. Rexroad*, 175 Kan. 676, 266 P. 2d 320, this court refused to accept the defense of lack of privity in an action brought by owners of property damaged by a contractor. The improvement contract was entered into between the officers of a city and a street improvement contractor. The contractor agreed to stand liable for damage to buildings, trees and shrubbery arising from the work necessitated by the street improvement. In disapproving a previous case decided on privity the court said:

". . . Be that as it may there are other sound reasons for holding the rule in the Mott case, to the effect there was no such privity of contract between the parties as would authorize the plaintiff to maintain the action, is no longer to be regarded as sound and should be disapproved. In the years since its decision there has been steady progress on the part of the courts in the extension of the right of a third party to sue on a contract made for his benefit and it has been stated frequently that in the light of modern developments privity in the sense it was used prior to recognition of the present third party beneficiary doctrine is no longer necessary in order for the beneficiary to maintain an action or recover on a contract intended for his benefit." (p. 681.)

Under the alleged facts of our present case, accepting the same in the light most favorable to the appellants, we must assume the

appellee, Byers, had knowledge of the saline content of the soil of the lots it placed on the market. After the grading and development of the area this material defect in the lots was not within the fair and reasonable reach of the vendees, as they could not discover this latent defect by the exercise of reasonable care. The silence of the appellee, Byers, and its failure to disclose this defect in the soil condition to the purchasers could constitute actionable fraudulent concealment under the rule in *Jenkins v. McCormick,* supra. One who makes a fraudulent misrepresentation or concealment is subject to liability for pecuniary loss to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation or concealment.

Of course, the fraudulent concealment to be actionable has to be material to the transaction. A matter is material if it is one to which a reasonable man would attach importance in determining his choice of action in the transaction in question. (Restatement, Second, Torts, § 538 [Ten. Draft No. 10, 1964].) There is little doubt in this case a prospective purchaser of a residential building site would consider the soil condition a material factor in choosing a lot on which to build his home. It materially affected the value and acceptability of the homesite.

As to privity we do not believe it is important to categorize its existence under a particular legal theory. Suffice it to say the appellants were in that class of persons desiring building lots in a choice residential area whom appellee intended and had reason to expect would purchase and build their homes. The fact that title was first taken in the names of the builders did not change the identity of those who would be ultimately affected by any fraudulent misrepresentations or nondisclosure of material defects in the lots. The building contractors were acting on behalf of their respective purchasers as a conduit or temporary way station for the legal title which, it was understood, would pass on completion of the homes to the appellants. There is no lack of privity in this case which would prevent causes of action based on fraud, and, in this, the district court erred in entering summary judgments for the appellee, Byers.

One final matter must be considered. The three claims were consolidated in the trial court. One claim was brought by George M. Parsons and Linda M. Parsons. Their claim concerned a lot which was transferred to them on April 14, 1967. It is now conceded their petition was filed almost four years later and that their cause of

action based on fraud was barred by the two year statute of limitations, K. S. A. 1972 Supp. 60-513 (3). Therefore, as to District Court Case No. C-21628 entitled George M. Parsons and Linda M. Parsons v. Byers Construction Co. of Kansas, Inc., appellants' claim cannot be upheld on either the theory of implied warranty or fraud, as to them the summary judgment in favor of the appellee is affirmed.

As to the claims of Reichart and the Griffiths in District Court Cases No. C-21627 and C-21629 the order of the district court entering summary judgment in favor of the appellee is affirmed as to those claims based on implied warranty but reversed as to the alternative claims based on fraud, and these cases are remanded with instructions to proceed in accordance with the views expressed herein.