PUBLISH

UNITED STATES COURT OF APPEALS

Filed 12/31/96

TENTH CIRCUIT

---

DANNY ENSMINGER and CYNTHIA
ENSMINGER,

     Plaintiffs-Appellees,

v.

TERMINIX INTERNATIONAL
COMPANY, a limited partnership,

     Defendant-Appellant.

No. 95-3314

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 92-CV-1402)

---

Thomas J. Lasater (Lyndon W. Vix with him on the briefs), Fleeson, Gooing, Coulson &
Kitch, L.L.C., Wichita, Kansas, for Defendant-Appellant.

Robert T. Cornwell, Law Offices of Robert T. Cornwell, Wichita, Kansas, for Plaintiffs-
Appellees.

---

Before **SEYMOUR,** Chief Judge; and **PORFILIO** and **HENRY**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

In this appeal, Terminix International Company contends a jury's adverse verdict is infested with error which the district court failed to repair when it denied post-trial motions for judgment as a matter of law and new trial. Concluding Terminix has infused the issues with its own interpretation of the elements of a claim of fraud by silence under the structure of Kansas law, we affirm.

In purchasing a home in a Wichita suburb, Cynthia and Danny Ensminger obtained from the sellers assurance the house was free of termites. The Wood Destroying Insect Information Report which they submitted with their financing documentation indicated, "based on careful visual inspection of the readily accessible areas of the property no visible evidence of infestation from wood destroying insects was observed." Robert Stotts, a termite inspector employed by Terminix, signed the form after performing an inspection of the property. However, shortly after the Ensmingers moved in, ceramic tiles plummeted from the bathroom wall exposing catacombs of termite activity.

The Ensmingers sued Terminix[1] alleging under Kansas law claims of actual fraud and fraud by silence. After the court exterminated their claim of actual fraud, the lack of evidence of an intent to deceive mandating partial summary judgment, a jury heard plaintiffs' evidence of Terminix's commission of fraud by silence. According to plaintiffs, the sellers contacted Terminix after a first inspection they solicited revealed the

---

[1]They also sued the sellers but dismissed those claims with prejudice before Terminix removed the case to federal court.

presence of termites in an unattached doghouse in the back of the house. Observing other conditions conducive to termite infestation, the house sitting in the ground, earth-wood contact in the front and rear, and the road's sloping down into the property, the first inspector advised the sellers to remove the doghouse whose infested wooden structure abutted the house and seek a second opinion to confirm his recommendation termite treatment was warranted. The seller removed the doghouse, contacted Terminix and told its agent about the first inspection, although Mr. Stotts characterized this information "kind of like water off a duck's back." However, termite damage visible in an accessible humidifier room and in three accessible attic areas remained undetected and unnoted as Mr. Stotts wrote, "no visible signs of damage, in my opinion."

From its part, Terminix focused on the dialog between the seller and Mr. Stotts, attempting to establish the seller only communicated she wanted a second opinion to sell the house and nothing about the results of the first inspection. Terminix argued there was no incentive to limit its effort to the $20 inspection fee, of which $4 was paid in commission to Mr. Stotts, rather than to promote selling costly termite treatment programs.

The jury found Terminix liable and awarded $120,800 in actual damages, later reduced by $10,000. Then, providing the predicate for an award of punitive damages under Kan. Stat. Ann. § 60-3701, the jury concluded Terminix's conduct was wanton, and the court accepted that recommendation and awarded $200,000 in punitive damages.

Terminix challenged these rulings and other issues in post-trial motions for judgment as a matter of law and new trial and now raises only the foundational questions of liability and punitive damages left intact by the court's denial of those motions.  Although we examine those issues under the substantive law of Kansas, we follow federal law to determine whether the court erred in denying Terminix's motion for judgment as a matter of law under Fed. R. Civ. P. 50(b).  ***Zimmerman v. First Federal Sav. & Loan Ass'n***, 848 F.2d 1047, 1051 (10th Cir. 1988).  Our review is *de novo,* ***Compton v. Subaru of America, Inc.***, 82 F.3d 1513, 1520 (10th Cir. 1996), *petition for cert. filed*, 65 U.S.L.W. 3342 (U.S. Oct. 23, 1996) (No. 96-645), to find error "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found; we must construe the evidence and inferences most favorably to the nonmoving party." ***Zimmerman***, 848 F.2d at 1051 (citing ***EEOC v. Prudential Fed. Sav. & Loan Ass'n***, 763 F.2d 1166, 1171 (10th Cir.), *cert. denied*, 474 U.S. 946 (1985)).

### I.  Fraud by Silence

Terminix uses the district court's grant of partial summary judgment on plaintiffs' actual fraud claim to attack the judgment for fraud by silence.  It reasons, absent an intent to deceive or a special relationship, as a matter of law, plaintiffs could show no evidence Terminix had a duty to disclose information which they characterized as concealed.  Terminix maintains the alleged hearsay statement from the seller to Mr. Stotts about the first inspector's findings cannot spawn an intent to deceive.  Nor, Terminix insists, can

plaintiffs' status metamorphose into that of the sellers to establish the requisite contractual or fiduciary relationship underpinning a duty to disclose. When the absence of these two elements is coupled with the irrefutable fact Terminix gained no advantage by concealing information from plaintiffs, treatment services representing the profitable side of the business, and it had "no interest in the real estate transaction," Terminix contends the court misread Kansas law to hold otherwise. Terminix relies on **DuShane v. Union National Bank**, 576 P.2d 674 (Kan.1978), which it interprets narrowly to require a fiduciary relationship in which the information provider deals directly with the plaintiff and the former receives an advantage by failing to disclose the omitted information to the latter.

In Kansas, to prove a cause of action for fraud by silence, plaintiff must set forth by clear and convincing evidence:

> (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could [not] have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to the plaintiff.

**Eckholt v. American Business Information, Inc.**, 873 F.Supp. 510, 519-20 (D. Kan. 1994). In **Wolf v. Brungardt**, 524 P.2d 726, 736 (Kan. 1974), the Kansas Supreme Court described the claim:

Where one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expedience of the bargain.

Key to this cause of action, we think, is the unequal relationship in which the claimant seeks particular information from a specialist upon which the recipient intends to rely or act. Under Kansas law, that interaction in those circumstances may create a fiduciary relationship. Moreover, although Kansas law does not specifically define the nature of that unequal relationship, we are satisfied its concept of a "fiduciary relationship" embraces it. In **Denison State Bank v. Madeira**, 640 P.2d 1235, 1243 (Kan. 1982), the court quoted from a venerable Kansas case:

> A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.
>
> . . . .
>
> The courts have consistently refused to give an exact definition to, or to fix definite boundaries of, that class of human relations which, by principles of common honesty, require fair dealing between the parties, and which is commonly known as fiduciary relations.

**Lindholm v. Nelson**, 125 Kan. 223, 232, 264 P. 50 (1928).

Kansas law, then, looks to the facts and circumstances of each case to determine whether the parties are bound by a contractual or fiduciary relationship. Indeed, *DuShane* says no more.

In that case, Mr. DuShane, who himself had handled credit inquiries and worked for a Texas oil and gas company, contacted a bank official to inquire about the financial status of an individual from whom Mr. DuShane contemplated purchasing oil and gas drilling ventures. In addition to Mr. DuShane's prior banking experience, the court distinguished, "[t]he inquiry by DuShane was not in the course of any business between him and the Union National Bank. It did not concern a possible purchase of any specific oil and gas interest of [the individual] on which the bank held a past due mortgage." 576 P.2d at 679. Consequently, the court observed,

> [w]here a plaintiff and defendant are not bargaining with each other and the defendant obtains no advantage from suppressing or concealing information about a third party the law has generally absolved the defendant of liability unless he has made a statement which induced the plaintiff to act, knowing that the statement was false or at least making it recklessly.

*Id.* (citations omitted).

In contrast, this record discloses, as the district court found, Terminix employees know that home buyers rely on the termite inspection report in making the decision whether to purchase a home. Plaintiffs had no experience or ability to detect termite activity themselves. They relied on the report supplied by the sellers and signed by Terminix. Surely, knowing the prospective purchase is termite free or poised to emit a

swarm of these winged pests can fairly be characterized as material information leading a purchaser to accept the bargain or abandon the deal. *See **Lynn v. Taylor***, 642 P.2d 131, 134 (Kan. App. 1982) ("A matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in question.") (citation omitted). Here, undertaking that obligation for the *sellers* for the benefit and use of the prospective *buyers* who would have no ability to detect a problem even with the exercise of reasonable diligence creates a duty to disclose. Consequently, the essence of a fiduciary relationship under Kansas law is created mandating Terminix to disclose that information its superior position controlled or to face liability for its concealment.

Thus, Terminix's effort to distinguish the facts of this case from those of other Kansas termite recovery cases must fail. While each may have involved sellers or buyers directly contracting with the termite service or realtor, recovery was premised on the failure to communicate when the superior knowledge sought assisted the seeker in judging the expediency of the bargain. *See **Ettus v. Orkin Exterminating Co.***, 665 P.2d 730 (Kan. 1983); ***Grove v. Orkin Exterminating Co.***, 855 P.2d 968 (Kan. App. 1992); ***Lynn v. Taylor,*** 642 P.2d 131 (Kan. App. 1982). Moreover, none transforms the duty to disclose into a specific intent to deceive. It is the silence in the face of the specific undertaking to speak that is actionable. The duty the speaker assumes arises from the

particularized interaction, and Kansas law does not infuse that duty with a specific intent to deceive.

Instead, Kansas law indicates an expansion of the nexus required to constitute a duty to disclose. In *Griffith v. Byers Construction Co. of Kansas, Inc.*, 510 P.2d 198 (Kan. 1973), the Kansas Supreme Court extended the liability of the vendor to a third party for the nondisclosure of defects announced in *Jenkins v. McCormick*, 339 P.2d 8 (1959),[2] to permit home buyers to recover from the developer of a housing addition although each had dealt only with separate building contractors. Plaintiffs alleged the developer had fraudulently concealed the fact that the homesites were part of an abandoned oil field containing salt water deposits that would not support vegetation. The developer graded the properties in a certain way to conceal the salt areas. The court found because the developer had knowledge of the saline content of the soil, his silence and "failure to disclose this defect in the soil condition to the purchasers could constitute actionable fraudulent concealment under the rule in *Jenkins v. McCormick*." *Griffith*, 510 P.2d at 204. The court added, "Liability for misrepresentation is not necessarily

[2]It is stated in the headnotes in *Jenkins*:

> Where a vendor has knowledge of a defect in property which is not within the fair and reasonable reach of the vendee and which he could not discover by the exercise of reasonable diligence, the silence and failure of the vendor to disclose the defect in the property constitutes actionable fraudulent concealment.

184 Kan. 842, 339 P.2d 8 (1959).

limited to the person with whom the misrepresenter deals," and reminded, "[o]f course, the fraudulent concealment to be actionable [sic] has to be material to the transaction." *Id.* at 203, 204.

Hence, under the law of fraud by silence in Kansas, construing the evidence and inferences in plaintiffs' favor, we cannot say the evidence was not susceptible to the inferences the jury drew. Not only do we reject Terminix's effort to insert the element of a specific intent to deceive in a cause of action for fraud by silence,[3] but also we find its interpretation of Kansas law of what constitutes a fiduciary relationship is too wooden.

## II.  Punitive Damages

Again entrenching the element of an intent to deceive into the underlying claim for relief, Terminix contends in a constructive fraud case such as this,[4] the absence of its intent to deceive is tantamount to negating the very basis for awarding punitive damages. Albeit conceding the jury specifically found its conduct to be wanton, Terminix urges the court's ruling it lacked specific intent established as a matter of law Terminix made no

---

[3]During oral argument, Terminix cited our recent case, **Wilson v. Meeks,** 98 F.3d 1247 (10th Cir. 1996), for the proposition that Kansas requires proof of a specific intent to deceive in a fraud by silence case. While we stated a common element of a claim of fraud and fraud by silence is "either a specific intent to deceive or at least recklessness leading to the deception," Terminix overreads the statement by ignoring the last clause. To the extent the statement may be read otherwise, we believe the claim of fraud by silence does not include the element of a specific intent to deceive.

[4]In its brief, Terminix interchanges the terms "constructive fraud" with "fraud by silence" and "fraud by concealment." Plaintiffs, however, sued under a claim of fraud by silence, distinct in Kansas law.

false or reckless statements and did nothing intended to deceive the plaintiffs. Moreover, because Terminix received no benefit from the inspection, the $20 fee representing the company's loss leader, it complains the basis for punishment is absent.

In a separate order, the court set forth Kansas' substantive law of punitive damages, Kan. Stat. Ann. § 60-3701 (b),[5] and followed the state procedure, Kan. Stat. Ann. § 60-3701(a),[6] for determining the amount to be awarded once the jury decided punitive damages should be allowed. The court diligently applied the facts to these

[5]Kansas Statutes Annotated § 60-3701(b) states:

> (b)   At a proceeding to determine the amount of exemplary or punitive damages to be awarded under this section, the court may consider:
> (1)   The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;
> (2)   the degree of the defendant's awareness of that likelihood;
> (3)   the profitability of the defendant's misconduct;
> (4)   the duration of the misconduct and any intentional concealment of it;
> (5)   the attitude and conduct of the defendant upon discovery of the misconduct;
> (6)   the financial condition of the defendant; and
> (7)   the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage award to persons in situations similar to those of the claimant and the severity of the criminal penalties in which the defendant has been or may be subjected.

[6]Kansas Statutes Annotated § 60-3701(a) states:

> (a)   In any civil action in which exemplary or punitive damages are recoverable, the trier of fact shall determine, concurrent with all other issues presented, whether such damages shall be allowed. If such damages are allowed, a separate proceeding shall be conducted by the court to determine amount of such damages to be awarded.

precatory and nonexclusive factors, ***Patton v. TIC United Corp.***, 859 F. Supp. 509, 513 (D. Kan. 1994), to conclude not only was the greatest likelihood of harm realized, the house was devastated by termites despite Mr. Stotts' clean bill of health, but also Terminix only offered free termite treatment after plaintiffs were represented by counsel. The court concluded "a punitive damage award is warranted to deter defendant's demonstrated indifference to recurrence of similar conduct."

Hence, given the jury's finding Terminix's conduct was wanton, the court properly evaluated those actions in light of Kan. Stat. Ann. § 60-3701(b) to determine how the presence or absence of the suggested factors shaped its ultimate monetary award. ***See Patton***, 859 F. Supp. at 513-15  In light of the court's comprehensive treatment of the evidence and substantive findings for the basis of the award, Terminix's assertion the district court was "perplexed" by what conduct was actually wanton and failed to identify substantive grounds for awarding punitive damages is patently absurd.  First of the statutory factors, "the likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct," occurred: termites destroyed the house.[7] While, as the court noted, that damage was economic, severe bodily injury not having been alleged, when coupled with the company's internal and external responses to the

---

[7]Plaintiffs' expert witness, a realtor, testified the house should be razed to preserve the value of the land.

problem, the court fully substantiated the basis for its award. Thus, there was no abuse of discretion in awarding punitive damages under Kansas law.

Given our plenary review, we **AFFIRM** the denial of the motion for judgment as a matter of law. We also conclude the court did not abuse its discretion in denying the motion for new trial. Finally, we **AFFIRM** the award of punitive damages.