**KREEKSIDE PARTNERS, Plaintiff,**

v.

**NORD BITUMI U.S., INC., Defendant.**

**No. 95–2580–JWL.**

United States District Court,
D. Kansas.

March 7, 1997.

Peter S. DeLanoit, Mark A. Jess, Bryan Cave LLP, Kansas City, MO, for Kreekside Partners.

David R. Buchanan, Brown & James, P.C., Kansas City, MO, Frederick C. Biehl, III, Soriano, Henkel, Biehl & Matthews, Roseland, NJ, for Nord Bitumi U.S., Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This action resulted from leaky roofs suffered by a property owner, plaintiff Kreekside Partners (Kreekside). The roofing materials were manufactured by defendant Nord Bitumi U.S., Inc. (Nord). Kreekside brings claims of fraudulent and negligent misrepresentation against Nord, based on statements Nord allegedly made and failed to make concerning the qualifications of the roofing contractor and Nord's promise to process a warranty request.

The matter is presently before the court on Nord's motion for summary judgment (Doc. 80). For the reasons set forth below, the court grants the motion in part and denies the motion in part. The court grants summary judgment with respect to the claims that Nord fraudulently failed to disclose an intent to discourage contractors and the likelihood that no contractor would agree to its conditions. The court also grants summary judgment on Kreekside's claim that Nord negligently misrepresented that the contractor could obtain a warranty from Nord. The court denies Nord's motion with respect to all other claims.

### I. Facts [1]

Plaintiff Kreekside owns certain apartment buildings in Kansas City, Kansas, called Brookstone Apartments (formerly known as Kreekside Manor Apartments). Defendant Nord manufactures and supplies roofing materials. Nord's materials are generally sold to distributors and installed by approved contractors and registered applicators.

In 1992, Dennis Danner, doing business as Danner Roofing Company, applied with Nord to become a registered applicator or approved contractor. Nord's local distributor, Midwest Sales Company, recommended Mr. Danner to Nord and sponsored Mr. Danner's application. Nord eventually approved Mr. Danner, although it failed to follow some of its standard procedures in doing so. For instance, Michael Marquez, Nord's local sales representative, did not include in the application a note indicating that he had looked at Mr. Danner's previous work, although such a statement was normally required by Mr. Marquez's supervisor. Nor did Mr. Marquez send in photographs of past work by Mr. Danner, check Mr. Danner's credit references, or fill out the application form personally, all as normally required. Mr. Danner

---

**1.** In accordance with the summary judgment standard stated below, the facts are uncontro-verted or related in the light most favorable to Kreekside.

failed to fill out the application form completely and to submit financial statements. Nord gave Mr. Danner a certificate stating that he had completed a training seminar, although no such seminar had been conducted. Finally, Mr. Danner had not been approved by a previous roofing manufacturer, although Nord rarely approved contractors who were not registered with other manufacturers.

In 1993, Kreekside decided to have new roofs put in at Brookstone, and Mr. Danner submitted the lowest bid. In December of 1993, Kreekside contracted with Mr. Danner to apply Nord roofs.

Before accepting Mr. Danner's bid, Rick Vigran, one of Kreekside's principals, spoke with Mr. Marquez on the telephone about Mr. Danner. Mr. Vigran testified in his deposition about the conversation:

Q. What did you discuss about Mr. Danner?

A. I believe, if my recollection is correct, that I asked him if he had had any problems with Mr. Danner before in the past and if he was qualified to put on the roof.

Q. What did Mr. Marquez tell you with respect to whether held had any problems with Mr. Danner in the past?

A. Told me that they had—was unaware of any problems, and they could get the job done.

. . . .

A. Other reasons [for concluding that Mr. Danner was a good roofing contractor] is [sic] that I contacted Nord, as we had stated earlier, and talked to Mr. Marquez and had asked them whether or not Mr. Danner was a—someone who could apply the roofing products and doing [sic] a good job.

. . . .

A. [Mr. Marquez] told me, when I asked him whether or not held be able to get the job done, he told me he had never had any problems and didn't think there were going to be any problems, because he was an applicator, certified applicator.

Mr. Vigran then checked Mr. Danner's references, concluding that Mr. Danner was a good roofer. Mr. Vigran testified that, although he relied in part on the reference check and the amount of the bid in deciding to contract with Mr. Danner, he also gave "a lot of weight" to his conversation with Mr. Marquez. Mr. Vigran stated that, if Mr. Marquez had given him a bad report about Mr. Danner, he would have looked into the matter more.

Before contracting with Kreekside, Mr. Danner had installed Nord roofs at stores in Liberty, Missouri and Arlington, Texas. In each case, Nord issued a warranty after inspecting the stores. The Liberty roof later leaked, although Nord's inspection of the roof, conducted before Mr. Vigran's conversation with Mr. Marquez, did not reveal any problems.

In 1994, Mr. Danner put new Nord roofs on the Brookstone buildings. Because of deficient workmanship by Mr. Danner, however, the roofs leaked, causing damage to the buildings and to property belonging to the buildings' tenants. Mr. Danner refused to effect the necessary repairs to the roofs.

Jim Riffe, another principal of Kreekside, later contacted David Liebentritt, a Nord sales representative, about obtaining a Nord warranty. Mr. Liebentritt refused to inspect the Brookstone roofs. Mr. Liebentritt also told Mr. Riffe that if Kreekside contracted with another Nord-approved contractor to fix the roofs and if that contractor would accept liability for Mr. Danner's workmanship defects, then Nord would process a warranty request and inspect the roofs. Mr. Liebentritt reiterated this statement in a letter to Kreekside. At the time, Mr. Liebentritt thought it unlikely that another contractor would accept the Brookstone job on such terms.

Mr. Liebentritt later received calls about the Brookstone job from two contractors, Valentine Roofing Company and Action Contracting. When asked his thoughts on the job, Mr. Liebentritt told a Valentine representative that he would not get involved with the job if in Valentine's position. Mr. Liebentritt also spoke with Charlie Ford of Action Contracting. Mr. Liebentritt conceded

in his deposition that, when Mr. Ford asked for his opinion about the job, he stated that he wouldn't "touch it with a ten-foot pole." Mr. Ford testified in his deposition that when he asked what it would take to obtain a Nord warranty, Mr. Liebentritt responded as follows:

A. He told me to stay away from it, that he wouldn't come out and give a punch list on it and suggested that I just back away from it. And he also told me that his superiors and/or bosses told him to stay out of it.

Mr. Ford also testified that Mr. Liebentritt told him that "there's not going to be a warranty on the job."

Mr. Ford gave Kreekside a bid on the Brookstone repair job, but he would not assume liability for Mr. Danner's work. Mr. Ford told Mr. Riffe about the conversations with Mr. Liebentritt. Kreekside then decided not to pursue a warranty with Nord any further.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct., at 2511. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct., at 2555 (quoting Fed. R.Civ.P. 1).

## III. Fraudulent Misrepresentation

### A. Fraudulent Promise of Future Events

■ Kreekside first alleges that Nord fraudulently misrepresented that if Kreekside found a Nord-approved contractor to fix the roofs who would assume liability for Mr. Danner's work, Nord would process a warranty request. Kreekside asserts that Nord never intended to issue a warranty for these roofs.

■ The Tenth Circuit has stated the elements of the tort of fraudulent misrepresentation under Kansas law:

To establish a claim for fraud, a plaintiff must allege and prove four elements: (1) the defendant knowingly made untrue statements of fact; (2) the statements were made with the intent to deceive or recklessly made with disregard for the truth; (3) the plaintiff justifiably relied on the statements; and (4) the plaintiff was damaged.

*Osgood v. State Farm Mut. Auto. Ins. Co.,* 848 F.2d 141, 144 n. 3 (10th Cir.1988) (citing *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980)). Fraud must be proven by clear and convincing evidence. *Nordstrom,* 227 Kan. at 65, 605 P.2d 545.

As Nord notes, the alleged misrepresentation here relates to a promise to perform a future act.

To be actionable, a misrepresentation must relate to a pre-existing or present fact; statements or promises about future occurrences are not actionable. An exception exists where evidence establishes that, at the time the promise as to future events was made, the promisor did not intend to perform the promised action.

*Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1157 (10th Cir.1994) (citation omitted) (citing *Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 659–60, 360 P.2d 23 (1961)); *see also Anderson v. Heartland Oil & Gas Inc.,* 249 Kan. 458, 469, 819 P.2d 1192 (1991) ("The tort of fraudulent promise of future events is defined as a promise made which the promisor had no intent of performing when made. . . .").

Nord first argues that Kreekside has not submitted sufficient evidence of a present intent not to perform. Nord notes that Mr. Liebentritt stated that Nord would *process* a warranty request, not that it would *issue a warranty.* Nord also asserts that any claim that Nord did not intend to process a warranty application rests only on speculation because Nord was never asked to perform the promised act.

The court concludes that summary judgment is not appropriate on this basis. A question of fact arises concerning the meaning of Nord's promise to process a warranty request; such promise may at least contemplate a good faith consideration of the request. Mr. Ford testified, however, that, according to Mr. Liebentritt, Nord did not intend to issue a warranty.[2] Thus, a question of fact remains regarding whether Mr. Liebentritt's statement was false when made.

Nord also argues that Kreekside cannot have relied on the representation because it did not find a willing contractor, as required for Nord's performance.[3] Kreekside's evidence reveals that it ceased seeking contractors who would accept Nord's terms when it learned from Mr. Ford of Nord's intent not to issue a warranty. This evidence is sufficient to raise a genuine issue of material fact concerning Kreekside's reliance. Nord is not entitled to summary judgment on this claim of misrepresentation.

### B. Fraudulent Concealment

Kreekside next alleges that Nord fraudulently failed to disclose (1) that Nord did not

intend to issue a warranty in any case; (2) that Nord considered it unlikely that any contractor would agree to accept liability for Danner's work; and (3) that Nord in fact intended to discourage contractors from taking the job and contracting with Kreekside. Nord argues that it is entitled to summary judgment on this claim because it did not have a duty to make such disclosures.

 "Fraudulent misrepresentation includes affirmative acts and misstatements of fact or the concealment of acts or facts which legally or equitably should be revealed." *Albers v. Nelson,* 248 Kan. 575, 579, 809 P.2d 1194 (1991). The Tenth Circuit has recently stated that, to prove fraud by silence under Kansas law, a plaintiff must establish the following elements by clear and convincing evidence:

(1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to the plaintiff.

*Ensminger v. Terminix Int'l Co.,* 102 F.3d 1571, 1573–74 (10th Cir.1996). With respect to the second element, the concealed facts must be "facts which the party is under a legal or equitable obligation to communicate and in respect of which he could not be innocently silent." *DuShane v. Union National Bank,* 223 Kan. 755, 760, 576 P.2d 674 (1978).

Nord relies on *DuShane,* in which the Kansas Supreme Court held that a bank did not have a duty to disclose to the plaintiff

---

2. The court rejects Nord's argument that Mr. Ford's testimony about what Mr. Liebentritt said to him should be excluded as hearsay. *See* Fed. R.Evid. 801(d)(2) (admissions by party-opponent are not hearsay).

3. Nord suggests that Kreekside's failure to seek damages on this claim evidences a lack of reliance. The pretrial order, however, preserves Kreekside's claim for $1,000 in damages to compensate for employee time and expense in attempting to comply with Nord's terms.

certain financial information about a person with whom plaintiff intended to transact business. *Id.* The court stated:

> The question of what gives rise to a legal or equitable obligation to communicate is not always an easy question to resolve, but generally the duty must arise from a relationship existing between the parties when the suppression or concealment is alleged to have occurred. It may arise between two contracting parties when there is a disparity of bargaining powers or of expertise. . . .
>
> If the parties to a bargain are in a fiduciary relationship to one another a similar protection has generally been afforded.

*Id.* The court then noted that, in the case before it, the communication was not between contracting parties and no fiduciary relationship existed. *Id.* Finally, the court stated:

> Where a plaintiff and defendant are not bargaining with each other and the defendant obtains no advantage from suppressing or concealing information about a third party the law has generally absolved the defendant of liability unless he has made a statement which induced the plaintiff to act, knowing that the statement was false or at least making it recklessly.

*Id.* at 761, 576 P.2d 674.

The court also finds instructive the Tenth Circuit's recent interpretation of Kansas law in *Ensminger,* in which the court held that an exterminator hired by the seller of a house did have a duty to disclose information to the purchaser. 102 F.3d at 1575. The court described the cause of action as follows:

> Where one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expedience of the bargain.

*Id.* at 1574 (quoting *Wolf v. Brungardt,* 215 Kan. 272, 524 P.2d 726 (1974)). The court further stated:

> Key to this cause of action, we think, is the unequal relationship in which the claimant seeks particular information from a specialist upon which the recipient intends to rely or act.

*Id.* The court then noted that Kansas does not embrace a specific definition of "fiduciary relationship" and that courts must look to the specific facts and circumstances of each case. *Id.* Finally, in finding a duty to disclose in the case before it, the court concluded that "Kansas law indicates an expansion of the nexus required to constitute a duty to disclose." *Id.* at 1575.

Nord contends that the parties here were neither fiduciaries nor contracting parties, and that therefore no duty to disclose arose. The court disagrees, at least with respect to the allegation that Nord failed to disclose its intent not to issue a warranty. The parties may not have been contracting with each other formally, but Nord did promise to do something if Kreekside found the right contractor. Kreekside could not have known of an intent by Nord not to honor its word; Kreekside was entirely at Nord's mercy, and a disparity of position thus exists with respect to this claim. Unlike the bank in *DuShane,* Nord did stand to gain from its concealment because Nord had an incentive to placate Kreekside and stave off possible litigation. In addition, the case is more analogous to *Ensminger* because Nord had a direct financial interest in the situation—it would want to encourage the use of Nord materials, but also avoid the financial risk that attaches to a warranty. The court concludes that, given the unique relationship between the parties and the circumstances present in this case, as well as the Tenth Circuit's expansive reading of Kansas law on fraudulent concealment, Nord may have had a duty to disclose an intent not to issue a warranty. Accordingly, summary judgment is not appropriate on that claim of concealment.

The court concludes, however, that Nord did not have a duty to make the other two disclosures at issue. Nord was not re-

quired to disclose its belief that contractors would not likely agree to the terms; requiring such disclosures during the transaction of business would eviscerate parties' positions in the normal bargaining process. Nord's opinion on the matter was not the subject of any disparity of knowledge between Nord and Kreekside. Such is not the subject of any special expertise of Nord on which Kreekside was relying as an unknowing consumer; Kreekside was just as able to determine the likelihood that another company would assume liability for Mr. Danner's work. *See* Restatement (Second) of Torts § 551 cmts. k, *l* (1977) (traditional ethics of bargaining reflected in rule on disclosure of facts; defendant may reasonably rely on plaintiff to make own investigation and protect itself). Summary judgment is thus appropriate with respect to that claim of concealment.

■ Kreekside's claim that Nord should have disclosed that it intended to discourage contractors presents a closer question. The court agrees that, in such a situation as this, Nord should not be permitted to conceal an intent actively to hinder Kreekside's efforts to find a suitable contractor; such omission would be actionable because Kreekside could reasonably rely on the non-disclosure to believe that Nord would not engage in such conduct. Here, however, Kreekside presents evidence that Nord, when called and asked its opinion by two contractors, indicated that it would not get involved if in the contractors' shoes. The court concludes that, under these circumstances, Nord was not required to disclose to Kreekside that it would render its honest opinion about the project if asked. Kreekside could not reasonably have relied on any such omission to believe that Nord would not answer inquiries from interested contractors. *See* Restatement (Second) of Torts § 551 cmt. *l* (traditional ethics of bargaining enforced, good faith may require disclosure where defendant knows bargaining adversary is reasonably relying on disclosure). The court therefore grants summary judgment on Kreekside's final claim of concealment.

## IV. Negligent Misrepresentation

■ In the final pretrial order in this case, Kreekside alleges that Nord negligently misrepresented that Mr. Danner could obtain a warranty from Nord. Kreekside seems to have abandoned this claim in its brief in opposition to summary judgment. Specifically, Kreekside has not submitted evidence sufficient to meet its burden to establish either that such a representation was made or that the representation, if made, was false. Therefore, Nord is entitled to summary judgment on any such claim.

■ Kreekside also alleges that Nord negligently misrepresented that Mr. Danner was qualified and suitable for the Kreekside job. Kreekside asserts that such a representation was made both expressly by Mr. Marquez and impliedly through Nord's approval of Mr. Danner as a registered applicator.

The Kansas Supreme Court has recognized a cause of action for negligent misrepresentation. *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 605, 876 P.2d 609 (1994). The court expressly adopted Restatement section 552, which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 604, 876 P.2d 609 (quoting Restatement (Second) of Torts § 552(1) (1977)). Thus, the elements of negligent misrepresentation differ from those of fraud only with respect to the standard by which the defendant is charged with knowledge of the representation's falsity. *See id.*

Nord first argues that Mr. Marquez did not represent that Mr. Danner was qualified and suitable for the job. The court concludes, however, that the testimony of Mr. Vigran is sufficient to raise a genuine issue of fact with respect to that question. Although Mr. Vigran did not directly quote Mr. Mar-

quez using those exact words, his testimony, set forth above, does generally describe a conversation in which Mr. Marquez assured Mr. Vigran that Mr. Danner was qualified to apply Nord roofs and could do the required job without problem.

Nord next argues that a misrepresentation may not be implied from its approval of Mr. Danner. The court is unwilling at this stage, however, to foreclose completely such a basis for liability in this case. As a matter of public policy, it would seem that a representation by Nord to the public of Mr. Danner's approval should carry with it some affirmation of Mr. Danner's ability to install Nord roofs satisfactorily. Moreover, Mr. Vigran has testified that Mr. Marquez told him that no problems should be forthcoming because Mr. Danner had been approved by Nord. In such case, where Kreekside has also asserted an independent basis for the representation that Danner was qualified, the court cannot say that the Kansas Supreme Court would reject Kreekside's attempt to base its negligent misrepresentation claim in part on Nord's approval of Mr. Danner. *See International Fidelity Ins. Co. v. Gaco Western, Inc.,* 229 A.D.2d 471, 645 N.Y.S.2d 522, 525 (N.Y.App.Div.1996) (triable issue of fact whether defendant could be liable for negligent misrepresentation by approving contractor without adequate investigation into qualifications).

Nord also asserts that Kreekside has not met its burden of establishing that the representation was false, i.e., that Mr. Danner was not a good roofer. The court agrees that much of the evidence cited by Kreekside in opposing this argument is not sufficiently probative on this question. For instance, Kreekside states that Midwest, the distributor, pushed Mr. Danner's application through. The evidence to which Kreekside cites for that proposition, however, indicates merely that Midwest recommended Mr. Danner and sponsored his application. Kreek-side points to the evidence that Nord did not follow its normal procedures in approving Mr. Danner, but such evidence is not particularly helpful on this point. Nord's approving Mr. Danner without knowing if he was a good roofer does not imply that he wasn't one. Moreover, Kreekside did not provide evidence that a particular kind of training was necessary for the application of Nord roofs specifically and that such training was not given. Kreekside's evidence about Nord's approval of Mr. Danner, then, more properly addresses the negligence element than the falsity element of the claim.

Kreekside also points to testimony by Mr. Marquez that he did not know of any work done by Mr. Danner for which Nord issued a warranty. The evidence is clear, however, that Nord issued warranties on the Liberty and Arlington stores. Kreekside asserts that leaks at the Arlington store show Mr. Danner's poor workmanship, but the evidence offered in support of that assertion does not specifically refer to leaks at that store.

Nevertheless, the court believes that there is enough evidence to create a triable issue here. Nord has not controverted Kreek-side's statement that the leaks at Brookstone were caused by Mr. Danner's deficient workmanship. This fact, combined with Kreek-side's evidence that the Liberty roof suffered a number of leaks,[4] is sufficient to raise a genuine issue of fact concerning whether Mr. Danner was, in fact, a sub-par roofer. The issue is more appropriately reserved for the trier of fact, and summary judgment is not warranted on this basis.

 Nord next contends that it is entitled to summary judgment on this claim because the representation constituted an opinion. Generally, statements of opinion are not actionable; the plaintiff can form its own opinion and so has no right to rely on the defendant's representation. *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, 523, 527 P.2d 1026 (1974). There is an ex-

---

**4.** Nord objects to the letter relating the leaks at Liberty on hearsay grounds, but the court will consider the letter for summary judgment purposes under the business records exception to the hearsay rule. *See* Fed.R.Evid. 803(6). Kreek-side also submitted a report indicating that the Liberty leaks were caused by Mr. Danner's poor construction, but that opinion was not made by a disclosed expert, and the court will therefore disregard it. Even without the report, however, the evidence of the leaks themselves, combined with the evidence concerning the Brookstone roofs, is sufficient to create a genuine issue of fact.

ception, however—"where the terms of dealings are not equal, and the representor has superior knowledge of the subject, a statement which would otherwise be one of opinion will be regarded as one of fact." *Id.*

Nord asserts that no such disparity existed here, noting that Mr. Vigran was an experienced businessman who had hired roofing contractors in the past and who checked Mr. Danner's references. The court concludes, however, that the requisite disparity may be found here because Nord should have known better than anyone Mr. Danner's ability to apply Nord roofs, the determination of which almost certainly required a knowledge about Nord materials and their application specifically and an expertise in roofing generally. Nord is not entitled to summary judgment on this basis.

Finally, Nord argues that Kreekside did not rely on its representation in contracting with Mr. Danner, but rather relied on cost and its own checking of Mr. Danner's references. The court rejects this argument. A party's own investigation does not mean that it cannot have relied on another's representations. "The law does not deprive a defrauded party of relief because he had opportunity to investigate, when his lack of knowledge was such that the investigation would disclose nothing to him." *Fisher*, 215 Kan. at 525, 527 P.2d 1026 (citing *Wolf v. Brungardt*, 215 Kan. at 282–83, 524 P.2d 726). Here, Mr. Vigran testified that he relied, at least in part, on the statements made by Mr. Marquez. Such evidence is sufficient to raise a question of fact on the issue, thereby precluding summary judgment.

In summary, the court concludes that questions of material fact remain with respect to Kreekside's claim that Nord negligently misrepresented that Mr. Danner was qualified and suitable for the Brookstone job. Summary judgment is therefore not appropriate on that claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Nord's motion for summary judgment on Kreekside's fraudulent misrepresentation claims is granted in part and denied in part. The motion is granted with respect to Kreekside's claims that Nord fraudulently failed to disclose its intent to discourage contractors or the likelihood that no contractor would agree to its conditions, and those claims are hereby dismissed. Nord's motion is denied with respect to the other fraudulent misrepresentation claims.

**IT IS FURTHER ORDERED THAT** Nord's motion for summary judgment on Kreekside's negligent misrepresentation claims is granted in part and denied in part. The motion is granted with respect to Kreekside's claim that Nord negligently misrepresented that Mr. Danner could obtain a warranty from Nord, and that claim is hereby dismissed. Nord's motion is denied with respect to Kreekside's claim that Nord negligently misrepresented that Mr. Danner was qualified for the Kreekside job.

**IT IS SO ORDERED.**